797 A.2d 84

Robert DAVIS

v.

STATE of Maryland.

No. 2744, Sept. Term, 2000.

Court of Special Appeals of Maryland.

May 1, 2002.

Stacy W. McCormack, Asst. Public Defender (Stephen E. Harris, Public Defender, on the brief), Baltimore, for Appellant.

Kathryn Grill Graeff, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen. and Patricia Jassamy, State's Atty. for Baltimore City, on the brief), Baltimore, for Appellee.

Argued before MURPHY, C.J., KRAUSER and LEONARD L. RUBEN (Retired, specially assigned), JJ.

MURPHY, Chief Judge.

In the Circuit Court for Baltimore City, the Honorable William D. Quarles convicted Robert Davis, appellant, of possession of marijuana with intent to distribute. The State's evidence, seized from appellant's residence during the execution of a search warrant issued by the Honorable Kathleen M. Sweeney of the District Court of Maryland for Baltimore City, was sufficient to prove him guilty of that offense. Appellant does not argue to the contrary. He does argue, however, that the State's evidence was acquired in violation of his Fourth Amendment right to protection from unreasonable searches, and he presents a single question for our review:

> Whether the trial court erred in denying the appellant's motion to suppress all evidence during the execution of the "no-knock" warrant issued in this case.

For the reasons that follow, we shall answer "no" to this question and affirm the judgment of the circuit court.

## Background

Prior to trial, appellant filed a motion to suppress the evidence on the grounds that (1) the no-knock provision in the search warrant was invalid,[1] and (2) the search warrant lacked probable cause. Judge Quarles denied that motion in an oral opinion that included the following findings and conclusions:

> Okay. Pending ... are the motions of the defendants for suppression of evidence. The motion is based on the contention that the warrant executed in this case lacked probable cause, and that the entry to effect that warrant was unconstitutional because it was a no-knock entry.
>
> The warrant was issued on February 4 of the year 2000 by a district court judge. The warrant itself contains a section detailing the experience of the affiants, Police Officer Christopher O'Ree and Police Officer Jonathan Brickas.

---

1. Although the warrant itself did not expressly provide for a no-knock entry, we accept the parties' agreement that a no-knock provision was included in the warrant because the warrant "incorporated by reference" the affidavit presented in support of the warrant.

And the warrant, as I said, contains their experience, which includes several hundred arrests for narcotics violation, in excess of seventy warrants done, and further details training in undercover and uniform capacities.

The warrant recites the information received from a confidential source relating to marijuana sales in the 5100 block of Park Heights Avenue. The source details knowledge of persons known to it as "Meatball" and "Biggie" who are, respectively, defendants Robert Davis and Damont Adams.

It is alleged in the warrant that they maintained an apartment at 4011 Boreman Avenue on the second floor, where they stored marijuana. And it is also alleged that a black two-door Nissan Sentra is used for the transport of such marijuana.

The police, in the affidavit, recite their knowledge of the 5100 Block of Park Heights Avenue as an area known to them and others for its high level of marijuana sales. The officers recite their observations of the defendants in the 5100 block of Park Heights Avenue. The defendant's admission that they had operated a black Nissan Sentra, which the affiants also observed in the driveway of the— observed the defendants drive away in the Nissan.

The confidential source also provided information with respect to the interior of the Boreman Avenue address, which information was verified by the affiants. The confidential informant, who is discussed in the affidavit—the information relating to the reliability of that informant is detailed. And that reliability includes the seizure of substantial amounts of narcotics and firearms and cash.

The affiants, relying on their experience and training, state their belief that they are likely to encounter firearms in the Boreman Avenue address and request permission for a no-knock entry, which permission was granted.

A probable cause involves the determination of sufficient facts to show an interconnectedness between a crime, a criminal act, and a location. The warrant sufficiently de-

scribes the connection between the defendants and the location and the allegations of marijuana dealing, and thus meets the rudiments of probable cause.

Somewhat more vexing is the consideration whether the warrant itself provides say a sufficient basis for a no-knock entry. The cases, which have been discussed by the defense, and reviewed by the Court, largely involve situations in which law enforcement officers were confronted with situations which post entry were determined either to rise to level of exigency permitting no-knock entry or failed to meet that standard, and thus requires suppression.

No cases were found in which the issue presented was, in this context, in which there was pre-raid approval for a no-knock entry on a set of facts which essentially recite the officer's general and specific experience in law enforcement, from which they extrapolate the need, as they see it, for a no-knock entry. It is, of course, well-settled in search and seizure law that the issuing judge is permitted to rely upon the experience of law enforcement officers and the conclusions which reasonably flow from that experience in making the probable cause determination.

I see no reason to depart from that pattern when the examination is not the presence or absence of probable cause, but is instead the existence of exigencies meriting a no-knock entry. It is, in any event, a close question for the Court.

However, crediting the affiants' experience which involves hundreds of narcotics arrest, extensive training, and considerable experience in narcotics law enforcement, I cannot conclude that their conclusion with respect to the likeliness of firearms on the property is an irrational one.

Accordingly, I find that the agents, the police officers, acted appropriately in reliance upon the no-knock authority given by the warrant and conclude that the motion to suppress be denied.

Appellant preserved the suppression issue for our review by proceeding on an "agreed statement of facts" dictated into the record by the prosecutor.[2]

---

2. The prosecutor provided Judge Quarles with the following agreed upon facts:

> During the month of February 2000, Officers O'Ree and Brickas of the Northwestern District Drug Enforcement Unit conducted an investigation into Robert Davis, also known as "Meatball," and Damont Adams, also known as "Biggie," selling marijuana in the 5100 block of Park Heights Avenue.
>
> Information received resulted in the Honorable Judge Sweeney issuing a search and seizure warrant for the black male known as "Meatball," Damont Adams, and a black Nissan Sentra, tag number FXF 894, and the address of 4011 Boreman Avenue. The warrant was signed on February 4, 2000.
>
> On February 5, 2000, at approximately 7:40 a.m., armed with a warrant, Officers O'Ree, Brickas, Hyde, Lane, German, Geddes, and Sergeant Oxier, executed the warrant. Force was used to gain entry. Once inside the location, on the second floor, front left bedroom, was the defendant Robert Davis, also known as "Meatball," and the defendant Damont Adams, also know as "Biggie." In the basement was a Lawrence Van Sorty, and in the second floor, rear left bedroom, was Doris Van Sorty.
>
> Once all the occupants were secured, an orderly search of the dwelling was conducted. Recovered from the second floor, left front bedroom, that is the bedroom where the defendants were, was a loaded 25 caliber Titan semi-automatic handgun, serial number 249016, loaded with seven cartridges.
>
> Recovered from the dresser was a box of 25 caliber and 410 gauge ammunition. On the dresser was a note pad which the officers believed, based on their expertise and training in the field of narcotics, to be a tally sheet, photo identification of Robert Davis, paperwork, two sets of keys, photos of the defendants, and $270 in U.S. currency.
>
> In a top dresser drawer were numerous new empty ziplock bags, commonly used to package marijuana for street sales. In the bottom drawer of the dresser was H & R 410 shotgun, serial number B374718.
>
> Recovered from the refrigerator, which was in the bedroom, was a large ziplock bag containing 60 ziplock bags with green plant material suspected to be marijuana. Recovered from a cabinet was another large ziplock bag containing nine ziplock bags containing a green plant material suspected to be marijuana. Recovered from the center console of the vehicle, and that was the vehicle that the officer had a warrant for, that was FXF 894, they recovered numerous—they recovered a ziplock bag containing numerous empty ziplock bags commonly used to package marijuana. Also recovered from the basement was a 22 caliber revolver and a 12–gauge shotgun.

## Standard for Issuing a "No–Knock" Warrant

Appellant first contends that Judge Quarles failed to apply the proper standard of review to Judge Sweeney's issuance of the search warrant at issue in this case.[3] We disagree. From our review of *Richards v. Wisconsin,* 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), we are persuaded that, when the suppression hearing court reviews the issuing judge's decision to include a no-knock entry provision in the search warrant, the suppression hearing court should uphold that provision as long as the warrant application provided the issuing judge with a substantial basis for concluding that there existed a reasonable suspicion that, under the circumstances in which the warrant was to be executed, the knock and announce requirement would be dangerous to the executing officers or would result in the destruction of the items described in the search warrant.[4]

---

> Believing that the defendants, based on their training and experience in the field of narcotics, believing that the defendants were working as a team to possess with the intent to distribute marijuana on the streets of Baltimore with a handgun, they were arrested.

Over appellant's objection, the State introduced (1) the drug analysis establishing that the suspected drugs were marijuana; and (2) a copy of the firearms analysis on the Titan, serial number 249016, establishing that the gun was test-fired and it was operable and met the definition of a handgun. The statement of facts continued:

> Officers Brickas and O'Ree observed the defendants on two to three separate occasions within the preceding days in the area of the 5100 block which is a notorious high drug area specifically for marijuana sales. And that they were seen in the vehicle with the tag number FXF 894. And that would be the State's case, Judge.

3. When reviewing a motion to suppress, we examine only the record of the suppression hearing and not that of the trial. *Lee v. State,* 139 Md.App. 79, 84, 774 A.2d 1183 (2001), *cert. granted,* 366 Md. 246, 783 A.2d 221 (2001); *Wynn v. State,* 117 Md.App. 133, 165, 699 A.2d 512 (1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998). We will accept the facts as determined by the suppression hearing judge, unless those facts are clearly erroneous. *Id.* In making the ultimate conclusionary determination of the validity of the search, we must make our own independent constitutional appraisal by reviewing the law and applying it to the facts of the case. *Id.*

4. As to the suppression hearing court's review of the issuing judge's determination that the affidavit establishes probable cause for the issuance of a search warrant, this Court has stated:

In *Richards v. Wisconsin, supra,* the United States Supreme Court held that, when determining whether to suppress evidence seized by law enforcement officers who executed a search warrant without announcing their authority and purpose,

> ... in each case, it is the duty of a court confronted with the question to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement. In order to justify a "no-knock" entry, the police must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. This standard—as opposed to a probable cause requirement—strikes the appropriate balance between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries. This showing is not high, but the police

---

A close question of probable cause (or the admissibility of information from an informant bearing on probable cause) might be submitted to twenty fair and knowledgeable judges with ten finding one way and ten finding the opposite way and none of them being unreasonable or clearly erroneous. What happens when such a ruling comes to us, or to a suppression hearing judge, for review? Do we simply monitor the system for "error" (which is the basic, though limited, appellate function)? Do we extend due deference to any reasonable conclusion arising out of the gray area or broad discretionary range as something not "clearly erroneous" or a "clear abuse of discretion," even where we ourselves might have concluded otherwise from the same ambiguous predicate? Or do we make a *de novo* determination on these issues?

... *Illinois v. Gates* [462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)] leaves no room for doubt that reviewing courts, at the appellate level or at the suppression hearing level, have no business second-guessing the probable cause determinations of warrant-issuing magistrates by way of *de novo* determinations of their own. Unless the finding of the magistrate in this regard is "clearly erroneous" or represents "a clear abuse of discretion," it is unassailable. *Illinois v. Gates* [*supra*] makes it equally beyond dispute that this is not a change in the law, but a declaration of preexisting law. *Ramia v. State,* 57 Md.App. 654, 658–659, 471 A.2d 1064, *cert. denied,* 300 Md. 154, 476 A.2d 722 (1984).

should be required to make it whenever the reasonableness of a no-knock entry is challenged.

*Richards,* 520 U.S. at 394–95, 117 S.Ct. 1416 (1997) (citations omitted). In *Richards,* although the law enforcement officers did not have no-knock authorization in the search warrant, they proceeded to enter without knocking and announcing based upon observations that they made when they arrived on the scene of the premises to be searched.

Subsequent to *Richards,* this Court has considered two cases in which we were asked to order suppression of evidence seized as a result of no-knock entries: *Wynn v. State,* 117 Md.App. 133, 699 A.2d 512 (1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998) and *Lee v. State,* 139 Md.App. 79, 774 A.2d 1183, *cert. granted,* 366 Md. 246, 783 A.2d 221 (2001). In each of those cases, the search warrant did not include a no-knock provision, and the suppression hearing court accepted the testimony of the law enforcement officers who explained why they believed it was necessary to serve the warrant without announcing their purpose and authority. In each case, we applied *Richards,* affirming the judgment in *Wynn,* and reversing the judgment in *Lee* on the ground that "[t]he record is bare of any evidence of exigent circumstances that could possibly eliminate the constitutional necessity to knock and announce." *Lee,* 139 Md.App. at 91, 774 A.2d 1183.

In *Dashiell v. State,* 143 Md.App. 134, 792 A.2d 1185, No. 1182, September Term, 2001 (2002), we rejected the contention that officers serving a "no-knock" warrant had no right to conduct a pre-search pat-down of the persons on the premises when the warrant was served. Although that case did not involve a challenge to the "no-knock" provision in the search warrant, Judge James Eyler explained that "the nature of drug trafficking" compounded "the degree of danger present at [the scene of the search]," stating:

Persons associated with the drug business are prone to carrying weapons. *See Ybarra [v. Illincis],* 444 U.S. [85] at 106[, 100 S.Ct. 338, 62 L.Ed.2d 238] (Rehnquist J., dissenting) ("[F]irearms are as much 'tools of the trade' as are

most commonly recognized articles of narcotic paraphernalia") (quoting *United States v. Oates,* 560 F.2d 45, 62 (C.A.2 1977)); *Whiting v. State,* 125 Md.App. 404, 417, 725 A.2d 623 (1999) (nexus between drugs and guns); *Banks v. State,* 84 Md.App. 582, 591, 581 A.2d 439 (1990) ("[O]ne who is involved in distribution of narcotics, it is thought, *a factiori,* would be more prone to possess, and/or use, firearms, or other weapons, than a person not so involved."). The connection of guns and drugs exposes officers to greater risks when confronting suspects who deal drugs. *See [Michigan v.] Summers,* 452 U.S. [692] at 702[, 101 S.Ct. 2587, 69 L.Ed.2d 340] (even where "no special danger to the police [was] suggested by the evidence in this record, the execution of a warrant to search for narcotics is the kind of transaction that may give rise to sudden violence.... The risk of harm to both the police and the occupants is minimized if the officers routinely exercise unquestioned command of the situation."); *People v. Broadie,* 37 N.Y.2d 100, 112, 371 N.Y.S.2d 471, 332 N.E.2d 338 (N.Y.1975) ("Because of their illegal occupation, however, drug traffickers do often commit crimes of violence against law enforcement officers"). In the application for the search warrant, affiants stated they were keenly aware through their training and experience "that individuals in the distribution of controlled dangerous substances ... carry all types of weapons which puts the officers in danger during the execution of search and seizure warrants."

143 Md.App. at 134, 792 A.2d at 1196.

█ Due to the preference that searches be conducted pursuant to warrants issued by judicial officers, officers who obtain a search warrant have the benefit of (1) the good faith exception to the exclusionary rule, (2) a more deferential standard of review by the suppression hearing court,[5] and (3)

---

5. In *McDonald v. State,* 347 Md. 452, 701 A.2d 675 (1997), the Court of Appeals stated:

We review the judge or magistrate's decision to issue a search warrant to determine whether there was "a substantial basis for

the presumption that the affidavit does establish probable cause for the search. *Herbert v. State,* 136 Md.App. 458, 485–494, 766 A.2d 190 (2001). This preference should be equally applicable to "no-knock" warrants.

If at the time he or she is applying for a search warrant, a law enforcement officer believes that the circumstances under which the warrant will be executed justify dispensing with the knock and announce requirement, the officer should seek no-knock authorization from the warrant issuing judge. If the judge is satisfied that the request for a no-knock entry is reasonable, the judge should include in the warrant a mandate that, in substantially the following form,[6] provides:

**Good cause being shown therefor, the executing law enforcement officers are authorized to enter the premises to be searched without giving notice of their authority and purpose.**

Moreover, when they apply for no-knock authorization in a search warrant, law enforcement officers do not have to include in the affidavit the kind of search scene case-specific,

---

concluding that the evidence sought would be discovered in the place described in the application and its affidavit." *State v. Lee,* 330 Md. 320, 326[, 624 A.2d 492] (1993); *see Birchead v. State,* 317 Md. 691, 701[, 566 A.2d 488] (1989); *see also Potts v. State,* 300 Md. 567, 572[, 479 A.2d 1335] (1984). In this regard, we observed in *Birchead:*
> The judge's task is simply to make a practical, common-sense decision whether probable cause exists; however, his action cannot be a mere ratification of the bare conclusions of others.

317 Md. at 701[, 566 A.2d 488] (quotation marks and citations omitted). The Supreme Court, in *Illinois v. Gates,* 462 U.S. 213, 236[, 103 S.Ct. 2317, 76 L.Ed.2d 527] (1983), reiterated this standard of review, explaining "that after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review." The judge's determination that probable cause exists is entitled to great deference. *Id.* at 237[, 103 S.Ct. 2317]; *see also United States v. Leon,* 468 U.S. 897, 914[, 104 S.Ct. 3405, 82 L.Ed.2d 677]; *Lee,* 330 Md. at 326[, 624 A.2d 492].

*Id.* at 467, 701 A.2d 675 (parallel citations omitted).

**6.** The recommended provision appears in § 690.35 (Forms 6 & 7) of the 1971 edition of *West's* McKinney's Forms for the (New York) Criminal Procedure Law.

particularized circumstances of exigency that they would have to establish during the suppression hearing if they did not have a no-knock provision in the warrant and made the no-knock entry determination on their own.[7]

■ In the case at bar, the affidavit at issue included the following statements:

Based on information provided from an extremely reliable confidential source of the detailed information on "Meatball" and Damont Adams marijuana sales and storage in 4011 Boarman Ave. The corroborated information of the source. Your Affiant believes that "Meatball" and Damont Adams are storing large amounts of marijuana in 4011 Boarman Ave. Your Affiant prays of the issuance of a search and seizure warrant for the address of 4011 Boarman Ave., the vehicle known as a two door Nissan Sentra tag # FXF894, a black male known as "Meatball" and Damont Adams for violations of the Maryland C.D.S. laws.

The prior experience of Your Affiant indicates that narcotic/drug dealers/users have, carry and use Firearms to protect their operations. This protection is both from the Police and other drug dealers/users who may try to seize the drugs or moneys gained from the operation. These Firearms include handguns, rifles and shotguns. These weapons allow the drug dealer/user to operate freely and openly, also enabling them to retaliate against anyone they fell [sic] threatened by. The possession of these weapons is an extension of the narcotic operation and/or conspiracy being conducted. Due to the nature of the evidence your

---

7. Dispensing with the search scene case-specific particularized circumstances of exigency for law enforcement officers seeking no-knock authorization from a judicial officer serves the public interest. It is more beneficial for law enforcement officers to seek no-knock authorization in a search warrant, rather than make their own independent on-the-scene determination of whether to enter without knocking and announcing. If law enforcement officers had to make an identical showing of exigency regardless of whether they received no-knock authorization in the search warrant, there would be no incentive to seek judicial authorization prior to entering without knocking and announcing.

Affiant is seeking to seize in this investigation, specifically Article 27 Section 275–302 of the Annotated Code of Maryland. Your Affiant must gain entry quickly and safely into the dwelling. If entry is stalled or delayed the controlled dangerous substance can easily and quickly be destroyed. Therefore, Your Affiant will attempt to gain entry by the rush or No–Knock forced entry. This will enable the Entry Team to recover the evidence intact and provide members of the entry team with a margin of safety from weapons, which may be on the scene.

The affidavit also stated that large amounts of drugs had been seized as a result of information supplied by the source, that several people resided in the dwelling, and that co-defendant Adams had several previous arrests for drug violations. We therefore hold that (1) Judge Sweeney had a substantial basis for concluding that the affidavit established reasonable suspicion to believe that the executing officers needed to gain entry without knocking and announcing, and (2) Judge Quarles applied the correct standard of review.

## Good Faith Exception

■ Assuming arguendo that the affidavit did not establish the need for a no-knock provision in the search warrant, we are persuaded that the good faith exception to the exclusionary rule applies to the entry in this case. Thus far, Maryland courts have only applied the good faith exception to search warrants later deemed to be invalid as lacking probable cause. We are persuaded, however, that the good faith exception is equally applicable to no-knock provisions in search warrants.

■ Under the good faith exception, "evidence seized under a warrant subsequently determined to be invalid may be admissible if the executing officers acted in objective good faith with reasonable reliance on the warrant." *McDonald,* 347 Md. at 467, 701 A.2d 675. "The exclusionary rule was designed to deter police misconduct rather than to punish the errors of judges and magistrates." *West v. State,* 137 Md. App. 314, 351, 768 A.2d 150, *cert. denied,* 364 Md. 536, 774

A.2d 409 (2001)(quoting *Connelly v. State,* 322 Md. 719, 728, 589 A.2d 958 (1991)). The Court of Appeals in *McDonald* further stated:

> The Supreme Court in *Leon* did not suggest that evidence obtained under an invalid warrant is always admissible, but cautioned that "suppression of evidence obtained pursuant to a warrant should be ordered only on a case-by-case basis and only in those unusual cases in which exclusion will further the purposes of the exclusionary rule." The Court held that "in the absence of an allegation that the magistrate abandoned his detached and neutral role, suppression is appropriate only if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause."

347 Md. at 468, 701 A.2d 675 (citations omitted).

■ There are four situations in which the good faith exception does not apply, and the exclusionary rule remains the appropriate remedy:

> (1) if the magistrate, in issuing a warrant, "was misled by information in an affidavit that the affiant knew was false or would have known was false except for a reckless disregard of the truth," or (2) "in cases where the issuing magistrate wholly abandoned his judicial role ... [so that] no reasonably well trained officer should rely on the warrant," or (3) in cases in which an officer would not "manifest objective good faith in relying on a warrant based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable," or (4) in cases where "a warrant may be so facially deficient—i.e., in failing to particularize the place to be searched or the things to be seized—that the executing officers cannot reasonably presume [the warrant] to be valid."

*McDonald,* 347 Md. at 468–469, 701 A.2d 675 [citations omitted].

■ Appellant argues that this is a case in which the affiant-officers simply could not have an objective, good faith

reliance on the no-knock authorization because no reasonable law enforcement officer would reasonably believe that the information in the affidavit justified excusing the knock and announce requirement. From our review of the affidavit at issue, we disagree.

Other courts have applied the good faith exception to cases involving the issuing of a no-knock search warrant. *See United State v. Tisdale*, 195 F.3d 70 (2nd Cir.1999); *United States v. Carter*, 999 F.2d 182 (7th Cir.1993); *United States v. Moland*, 996 F.2d 259 (10th Cir.1993); *United States v. Moore*, 956 F.2d 843 (8th Cir.1992); *United States v. Gonzalez*, 164 F.Supp.2d 119 (D.Mass.2001); *United States v. Rivera*, 2000 U.S. Dist. Lexis 7997 (D. Maine 2000); *United States v. Brown*, 69 F.Supp.2d 518 (S.D.N.Y.1999); *United States v. Tavarez*, 995 F.Supp. 443 (S.D.N.Y.1998); *State v. Van Beek*, 591 N.W.2d 112 (N.D.1999); *State v. Eason*, 245 Wis.2d 206, 629 N.W.2d 625 (2001). We agree with those decisions.

Application of the good faith exception to a "no-knock" warrant is entirely consistent with our holdings in *Dashiell v. State, supra,* and *Herbert v. State, supra.* Thus, even if we had concluded that Judge Sweeney should not have authorized a no-knock entry in this case, we would not reverse appellant's conviction. Suppressing evidence under these circumstances would not serve the purpose of the exclusionary rule, which is designed to deter police misconduct rather than to punish police for the errors of judges and magistrates. When the police officers follow the proper course of conduct by seeking a no-knock search warrant, the good faith exception applies. Appellant's motion to suppress was properly denied.

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**