807 A.2d 797

**STATE of Maryland,**

v.

**Carey Omar RILEY and Jermarl Jones.**

**Nos. 2629, 2632 Sept. Term, 2001.**

Court of Special Appeals of Maryland.

Sept. 13, 2002.

Kathy Graeff, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General, Rachel Marblestone Kamins, Assistant Attorney General, Baltimore, and Sandra A. O'Connor, State's Attorney for Baltimore County of Towson, on the brief), for State.

Michael E. Kaminkow (Schulman, Treem, Kaminkow, Gilden & Ravenell, P.A. on the brief), Baltimore, for appellant, Riley.

Stanley H. Needleman, Baltimore, for appellant, Jones.

Argued before GREENE, CHARLES E. MOYLAN, JR. (retired, specially assigned) and RAYMOND G. THIEME, JR. (retired, specially assigned), JJ.

MOYLAN, Judge.

On the surface, this appeal might appear to be about the required proof of exigency necessary to justify a no-knock entry in the execution of a search warrant. It is that, but only secondarily. We are concerned, to be sure, with whether a given set of facts could support a finding of exigency, but our primary focus is on who is making that finding in the first instance. What this appeal is really about is the appropriate standard of review for assessing that first finding.

What will control the outcome of this appeal is the procedural posture in which the set of facts appears. In different postures, the same set of facts may yield diametrically different, albeit equally proper, results. It may make a critical difference whether the judge whose decision is being appealed was 1) properly making a decision on the merits of such exigency or 2) reviewing another judge's prior decision in that regard. It may make a critical difference whether the set of ostensibly exigent circumstances 1) was being advanced to justify a warrantless police decision to make a no-knock entry or 2) was the basis for a judge's decision to issue a no-knock warrant. Finding the right answer will depend on identifying the right question.

## The Recent Recognition of "No–Knock" Law
## As a Constitutional Phenomenon

Although the constitutional status of no-knock law necessarily depends on the fact that it was a recognized, albeit low-key, part of Anglo–American common law at the time of the framing and ratification of the Fourth Amendment (1789–1791), its significance only dawned upon us with Justice Thomas's opinion for a unanimous Supreme Court in *Wilson v. Arkansas*, 513 U.S. 1014, 115 S.Ct. 571, 130 L.Ed.2d 488 (1994).[1] Two years later, *Richards v. Wisconsin*, 520 U.S. 385, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997), further fleshed out the "knock and announce" requirement. Neither *Wilson* nor *Richards* involved no-knock warrants, however, and they have no pertinence to the question before us except, of course, to bring the alleged Fourth Amendment violation within the purview of the suppression hearing.

Maryland has on three prior occasions examined the "knock and announce" requirement pursuant to Fourth Amendment analysis. Two of those cases, however, did not involve no-knock warrants and have little bearing on the case under review. In *Wynn v. State*, 117 Md.App. 133, 699 A.2d 512

---

1. Twice before 1995, the Supreme Court had considered the "knock and announce" requirement, but only as a requirement of federal statutory law, to wit, of 18 U.S.C. § 3109. Neither *Miller v. United States*, 357 U.S. 301, 78 S.Ct. 1190, 2 L.Ed.2d 1332 (1958), nor *Sabbath v. United States*, 391 U.S. 585, 88 S.Ct. 1755, 20 L.Ed.2d 828 (1968), was decided on the basis of the Fourth Amendment.

   On three occasions prior to 1995, Maryland recognized the "knock and announce" requirement as a part of the common law, but on each occasion held that exceptions to the requirement satisfied the rule. *Henson v. State*, 236 Md. 518, 204 A.2d 516 (1964); *Kates v. State*, 13 Md.App. 688, 284 A.2d 651 (1971); *Waugh v. State*, 3 Md.App. 379, 239 A.2d 596 (1968).

   Maryland, of course, has no exclusionary rule for general violations of search-and-seizure requirements. (There are special exclusionary rules for such things as wire-tapping and electronic eavesdropping violations.) Maryland is bound by the exclusionary rule of *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). *Mapp* only applies to violations of the federal Fourth Amendment. A mere violation, therefore, of the Maryland Constitution, of a Maryland statute, of a Maryland Rule of Court, or of the common law would have no bearing on the outcome of a suppression hearing in Maryland.

(1997), *rev'd on other grounds,* 351 Md. 307, 718 A.2d 588 (1998), we held that there was a sufficient showing of exigency to justify a warrantless police decision to execute an entry without knocking and announcing. In *Lee v. State,* 139 Md. App. 79, 774 A.2d 1183 (2001), we held that there had not been such a sufficient showing of exigency as to forgive a warrantless no-knock entry. On both occasions, we were reviewing findings by a suppression hearing judge on the ultimate merits of the exigency advanced as justification for the warrantless no-knock entries. On neither occasion were we reviewing a hearing judge's reviewing of an antecedent judicial decision.

On only one occasion have we reviewed the actual issuance of a no-knock warrant. That was in the recently filed opinion by Chief Judge Joseph Murphy in *Davis v. State,* 144 Md.App. 144, 797 A.2d 84 (2002). In *Davis,* a judge had issued a no-knock warrant, and the trial court denied the motion to suppress, ruling that the earlier decision to issue the warrant had been proper. We affirmed that ruling. We shall be adverting regularly to *Davis v. State* in the course of this opinion.

### The Present Case

Pursuant to Courts and Judicial Proceedings Article, § 12–302(c)(3), the State has appealed the granting by the Circuit Court for Baltimore County of the motions to suppress evidence filed by the appellees, Carey Omar Riley and Jermarl Jones. The evidence in question was seized at an apartment in Baltimore County during the execution of a "no knock" warrant issued by District Court Judge Robert Cahill, Jr. A forced entry was involved.

Riley and Jones were arrested at the apartment during the execution of the warrant and both were separately indicted on charges of possession with intent to distribute and simple possession of both heroin and cocaine. Motions to suppress were filed and a joint motions hearing was held on January 31, 2002. The circuit court judge granted the appellees' motions. This appeal by the State followed.

Because of an August 12, 2002 deadline, this Court has already filed its decision to reverse the suppression order of the circuit court and to remand the cases for trials on the merits. We indicated at the time of filing our decision that this opinion explaining the decision would follow.

## The No–Knock Provision of the Search Warrant

At the suppression hearing in the circuit court, the sole basis for the ruling that the search warrant was invalid was that it included the no-knock provision. There is no need to review the probable cause to believe that criminal activity was afoot. The hearing judge's ruling was confined exclusively to the no-knock provision.

The warrant was issued by Judge Cahill for the search of Apartment 302 of 2801 Ashfield Drive. The primary source of the incriminating evidence in the warrant application was a confidential informant who had visited the apartment on three separate occasions in July and August of 2001 and had observed extensive evidence of large-scale commercial narcotics activity.

That part of the application offered in support of the no-knock request established (by a two step process) that the occupant of the apartment was one Theodore Cardwell and that Cardwell had a lengthy police "rap sheet" for offenses, including both assault and battery and the possession of handguns. The hearing judge ruled, secondarily, that the criminal record was not enough to establish the requisite danger and, primarily, that an adequate nexus had not been shown linking Cardwell to the apartment.

## The Standard of Review: Deference to the Warrant

The principle controlling our decision is that neither the appellate court nor the suppression hearing court is authorized to make the decision on the merits of whether the "no-knock" entry was necessary. That decision was delegated exclusively to the judge who was called upon to include that provision in the warrant. The limited after-the-fact review permitted either the circuit court or the appellate court re-

quires that the reviewing judges transcend any personal opinion as to what they, coincidentally, might have decided on the merits and concern themselves exclusively with whether the warrant-issuing judge had some rational basis for reaching the decision he did. The focus should not be on the exigency justifying the no-knock entry *per se*. It should be only on the legitimacy of another judge's prior decision in that regard.

### The Deferential Standard: Supreme Court Cases

With respect to the deference that reviewing courts owe to warrant-issuing judges or magistrates, the constitutional taproot is *Illinois v. Gates*, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Reviewing courts were there admonished not to second-guess the warrant-issuing judge and are reminded, moreover, that the deference is necessary as an incentive to police and prosecutors to resort, whenever possible, to the preferred warrant modality.

> [W]e have repeatedly said that *after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of de novo review. A magistrate's "determination of probable cause should be paid great deference by reviewing courts."* "A grudging or negative attitude by reviewing courts toward warrants," is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant....
>
> If the affidavits submitted by police officers are subjected to the type of scrutiny some courts have deemed appropriate, police might well resort to warrantless searches.

462 U.S. at 236, 103 S.Ct. 2317 (emphasis supplied).

The Supreme Court explained that all that is required to sustain the decision to issue the warrant is some "substantial basis" to support the judge's conclusion.

> Reflecting this preference for the warrant process, the traditional standard for review of an issuing magistrate's probable-cause determination has been that *so long as the magistrate had a "substantial basis for ... conclud[ing]"*

that a search would uncover evidence of wrongdoing, *the Fourth Amendment requires no more.*

*Id.* (emphasis supplied).

One year after *Illinois v. Gates* was decided, the Supreme Court, in *Massachusetts v. Upton,* 466 U.S. 727, 104 S.Ct. 2085, 80 L.Ed.2d 721 (1984), reversed a decision by the Supreme Judicial Court of Massachusetts that a search warrant had not been supported by an adequate showing of probable cause. The Supreme Court took the Massachusetts high court to task for having substituted its judgment for that of the warrant-issuing magistrate. It reiterated the standard of deferential review it had established the year before in *Illinois v. Gates.*

> We also emphasized that *the task of a reviewing court is* not to conduct a de novo determination of probable-cause, but *only to determine whether there is substantial evidence in the record supporting the magistrate's decision* to issue the warrant.

466 U.S. at 728, 104 S.Ct. 2085 (emphasis supplied).

### The Deferential Standard: The Maryland Cases

Under the capacious wings of *Illinois v. Gates,* the Maryland case law on deference to warrants sprang up profusely. In *Ramia v. State,* 57 Md.App. 654, 660, 471 A.2d 1064 (1984), this Court observed:

> *Illinois v. Gates* leaves no room for doubt that *reviewing courts,* at the appellate level or at the suppression hearing level, *have no business second-guessing* the probable cause determinations of warrant-issuing magistrates by way of *de novo* determination of their own.

(Emphasis supplied).

The Court of Appeals, speaking through Chief Judge Robert Murphy, twice affirmed the standard of review in *Potts v. State,* 300 Md. 567, 572, 479 A.2d 1335 (1984) ("After-the-fact judicial scrutiny of the affidavit should not take the form of *de novo* review."); and *Birchead v. State,* 317 Md. 691, 701, 566 A.2d 488 (1989) ("[W]e generally pay great deference to a magistrate's determination.").

In *West v. State*, 137 Md.App. 314, 322, 768 A.2d 150 (2001), Judge Thieme spoke for this Court.

> Reviewing courts (at the suppression hearing level or at the appellate level) do not undertake *de novo* review of the magistrate's probable cause determination but, rather, pay "great deference" to that determination. Reflecting a preference for the warrant process, the traditional standard for review of an issuing magistrate's probable cause determination has been that, *so long as the magistrate had a substantial basis for concluding that a search would uncover evidence of wrongdoing, the Fourth Amendment requires no more.*

(Emphasis supplied).

We explained in *Herbert v. State*, 136 Md.App. 458, 492, 766 A.2d 190 (2001), how, as an aspect of this deference, the presumption of validity enjoyed by a warrant is a very practical incentive for the police to submit, when they can, their decision to the judicial process.

> Once again, the Supreme Court has provided an incentive for searching with a warrant and a disincentive for searching warrantlessly. What are affected by this incentive/disincentive combination are the burdens of proof at a suppression hearing. *When the State has procured evidence of guilt by the favored and preferred modality of a warranted search, it is rewarded by a presumption of validity in favor of its warrant application.* Let the fact be once established or otherwise accepted that the search in issue was pursuant to a judicially issued warrant and the State is then entitled to the presumption. Because it is the State that enjoys the presumption, *the burden is allocated to the defendant to rebut it,* if he can.

(Emphasis supplied).

### The Preference For No–Knock Warrants Is Like the Preference For Warrants Generally

The fundamental policy undergirding the warrant requirement is just as strong with respect to the no-knock increment

as it is with respect to the underlying entry into the home itself. The constitutional concern is that the police should eschew making unilateral decisions both 1) as to **whether** the threshold should be crossed and 2) as to **how** the threshold should be crossed and should, instead, defer to the disinterested judgment on those questions of a neutral and detached judicial figure. We see no principled policy distinction whatsoever between those two closely related types of decisions. The classic statement of the policy was by Justice Jackson in *Johnson v. United States,* 333 U.S. 10, 13, 68 S.Ct. 367, 92 L.Ed. 436 (1948):

> The point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the support of the usual inferences which reasonable men draw from evidence. *Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.*

(Emphasis supplied).

Just as the decision **WHETHER** to cross the threshold should be submitted to a neutral and detached judicial figure, so too should the decision as to **HOW** to cross that threshold. In *Davis v. State,* 144 Md.App. at 156, 797 A.2d 84, Chief Judge Murphy explained:

> *If* at the time he or she is applying for a search warrant, *a law enforcement officer believes that the circumstances under which the warrant will be executed justify dispensing with the knock and announce requirement, the officer should seek no-knock authorization from the warrant issuing judge.* If the judge is satisfied that the request for a no-knock entry is reasonable, the judge should include in the warrant a mandate that, in substantially the following form, provides:
>
> **Good cause being shown therefor, the executing law enforcement officers are authorized to enter the prem-**

ises to be searched without giving notice of their authority and purpose.

(Emphasis supplied).

## The Deferential Standard of Review
## Applies to No–Knock Warrants

■ Although *Illinois v. Gates* was dealing with probable cause, its teaching as to deferential review would apply with equal strength to a judge's decision to exempt the police from the knock-and-announce requirement.

[T]he duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for ... conclud[ing]" that probable cause existed.

462 U.S. at 238–39, 103 S.Ct. 2317.

In *Davis v. State*, 144 Md.App. at 152, 797 A.2d 84, this Court also expressly applied the deferential standard of review to the inclusion of a no-knock provision in a warrant.

*[W]hen the suppression hearing court reviews the issuing judge's decision to include a no-knock entry provision in the search warrant, the suppression hearing court should uphold that provision as long as the warrant application provided the issuing judge with a substantial basis for concluding that* there existed a reasonable suspicion that, under the circumstances in which the warrant was to be executed, *the knock and announce requirement would be dangerous* to the executing officers or would result in the destruction of the items described in the search warrant.

(Emphasis supplied).

## A Lower Standard of Justification

Indeed, the deference might be even greater in the case of a no-knock warrant because the application for it need not satisfy the higher probable cause requirement, but only the less demanding requirement of reasonable suspicion as set forth in *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Supreme Court referred to that less demand-

ing standard in *Richards v. Wisconsin,* 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997):

> In order to justify a "no-knock" entry, *the police must have a reasonable suspicion* that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence. *This standard—as opposed to a probable cause requirement—strikes the appropriate balance* between the legitimate law enforcement concerns at issue in the execution of search warrants and the individual privacy interests affected by no-knock entries.

(Emphasis supplied).[2]

## The Suppression Hearing Ruling Smacked of Being a *De Novo* Determination

■ What matters in this case is not so much the decision that was made, but the kind of decision that was made. The same judge, with the same set of facts, could properly reach completely different results depending on the kind of decision he is making. In appraising a search warrant issued by someone else, as in this case, the hearing judge must suffer the austere rigors of appellate-style review. It was of this necessary narrowing of the vision that we spoke in *State v. Amerman,* 84 Md.App. 461, 463, 581 A.2d 19 (1990):

> [W]hen a judge, either at a pretrial suppression hearing or at trial, sits in review of another judge's earlier determina-

---

**2.** Actually, the less demanding standard for justifying a no-knock entry would affect both 1) a hearing judge's rulings on warrantless exigencies and 2) a chamber judge's decision to issue a no-knock warrant, but it would not affect the appellate-like review before us in this case.

Both 1) reasonable suspicion and 2) probable cause are levels of persuasion. When reviewing, on the other hand, whether a warrant-issuing judge had a "substantial basis" for issuing the warrant, we are talking about production and not persuasion. A substantial basis is almost certainly a lower burden of production than even a *prima facie* case for judging the legal sufficiency of evidence, but it is nonetheless a burden of production. Shifting the burden of persuasion, upward or downward, has no effect on the burden of production.

tion that probable cause existed to issue a search and seizure warrant, *the reviewing judge sits in an appellate-like capacity with all of the attendant appellate constraints.* Although he may ordinarily be accustomed to assessing probable cause as a matter of fact, he is in this less characteristic role called upon to assess it as a matter of law. *The issue is no longer the familiar one of whether probable cause exists; that has already been determined by someone else.*

(Emphasis supplied).

In the case now before us, the suppression hearing judge determined 1) that Cardwell's criminal record itself did not adequately establish a danger in the abstract and 2) that the nexus between Cardwell and the apartment had not been adequately developed. If he decided those things as a matter of fact, he did more than he was entitled to do.

## A. Cardwell's Criminal Record

The judge ruled that the criminal record of Cardwell, also known as Troy Bennett, was not enough to establish a danger to the officers executing the warrant:

I conclude from what I have heard ... that there should not have been a no-knock warrant in this case. I'm going to grant the motion to dismiss it and the reasons are that ... *Cardwell did have a record but* in my judgment, *I don't think the record was sufficient to permit the issuance of a no-knock warrant.*

(Emphasis supplied).

The Baltimore City Police Department "rap sheet" showed that between 1994 and July 2001, Cardwell had been arrested twelve times. Five of those arrests involved narcotics charges. Six of the arrests charged Cardwell with the possession of a handgun, five times on his person and once in a vehicle. Four times Cardwell was arrested for either assault or battery. There were also charges for both abduction and for resisting arrest. One of the handgun arrests was in July

2001, several weeks before the no-knock warrant in this case was issued.

In the context of a warrant application, the ultimate disposition of the charges shown on a "rap sheet" is not critical to their being considered. The appellees, nonetheless, at the suppression hearing and at oral argument before us haggled over Cardwell's "rap sheet." They sought to subtract therefrom any entries that did not show ultimate convictions.

The hearing judge seemed to buy into that approach. When the assistant state's attorney explained that on "rap sheets," the "disposition of those cases aren't included so when the judge goes to sign it, he or she doesn't know what happened in the case," the judge responded, after being told that some judges sign the warrants in such cases, "Don't bring them to me." The problem with the approach is that the hearing judge was not being asked to decide whether he would consider such evidence in a warrant application. He was being asked to decide whether some other judge had been out of line for having done so.

That conservative approach to a criminal reputation may be appropriate for certain trial uses, but has no applicability to warrant applications. In *State v. Amerman,* 84 Md.App. at 482–83, 581 A.2d 19, the suppression hearing judge had, as in this case, "totally discounted the significance of" a prior arrest. In reversing the suppression hearing judge, we stated, 84 Md.App. at 484, 581 A.2d 19:

> The Supreme Court case law makes it clear that *not only prior convictions but also prior arrests and even a criminal reputation may be significant factors in the probable cause equation.* In *Brinegar v. United States* (1949), *probable cause* to believe that Brinegar was illegally transporting liquor *was based in part upon the fact that five months earlier Brinegar had been arrested for a similar offense* and that Brinegar had "a reputation for hauling liquor." In *Carroll v. United States* (1952), a factor in the accumulation of probable cause of bootlegging was the police observation

of two of the suspects selling bootleg liquor three months earlier.

(Emphasis supplied).

In *Birchead v. State*, 317 Md. 691, 703, 566 A.2d 488 (1989), the Court of Appeals similarly held:

That the police confirmed that two of the suspects *had been charged in the past* with possession of a controlled dangerous substance (one with intent to distribute) was a factor to be taken into account in applying the "totality of the circumstances" formulated in *Gates*. (Emphasis in original).

See also *McDonald v. State*, 347 Md. 452, 467, 701 A.2d 675 (1997).

Although he was there assessing the significance of such a criminal record on the risk of danger in a warrantless setting, the observations of Judge Thieme in *Wynn v. State*, 117 Md.App. 133, 167–68, 699 A.2d 512 (1997), *rev'd on other grounds*, 351 Md. 307, 718 A.2d 588 (1998), are equally pertinent in the context of an application for a no-knock warrant.

We agree with the trial court that sufficient particularized evidence existed to support the conclusion that *the officers had an objectively reasonable belief that their personal safety was in danger because of appellant's* and Kenyon's *prior violent and criminal actions.* While we recognize that a reasonable belief that firearms may be within the residence, standing alone, is clearly insufficient to excuse a knock and announce requirement, additional facts created exigent circumstances in the instant case. *Appellant had a long criminal background, including drug, assault, burglary, and handgun convictions,* was currently on parole, and, most importantly, had pulled a concealed weapon to resist arrest and flee from law enforcement in the past.... Although the presence of a gun in a home is hardly unique in today's society, there is a reasonable basis for the police to conclude that the appellant would use a gun when confronted.

(Emphasis supplied).

We note, nonetheless, that five of the charges on Cardwell's "rap sheet" resulted in guilty verdicts, three of them on

charges involving handguns. With handgun charges ranging from 1994 through July 2001, we hold that, in this regard at least, Judge Cahill had a substantial basis for concluding that a police entry into a den of commercial narcotics-related activity, with Cardwell probably present, could be a dangerous undertaking calling for maximum tactical surprise.

## B. The Nexus Between Cardwell and Ashfield Drive

The second finding by the hearing judge was that a sufficient nexus had not been developed between 2801 Ashfield Drive and Cardwell. He ruled:

> I think there's no nexus between Cardwell and this apartment. The informant does not really identify him.... The apartment was not leased to him.... Cardwell, as I said, was really not connected to this apartment.

It clearly appears, however, as if Judge Cahill had a basis to conclude that a nexus between Cardwell and the apartment had been established. The affidavit offered in support of the application had recited:

> The [informant] explained that *the person who lived in the apartment* [Apartment 302 of Ashfield Drive] was a black male who was short and stocky. The [informant] explained that *this person also drove a Ford truck with Maryland Registration 29K–560.*

(Emphasis supplied).

Armed with that clue, the police then ran a records check on the tag through the Maryland Motor Vehicle Administration and learned that the truck was registered to Cardwell (under his alternative name of Troy Bennett). The records check was part of the affidavit. The record confirmed, moreover, that Cardwell was both "short" (5′ 07″) and "stocky" (210 lbs). It was a two-step process: "A equals B" and "B equals C." Therefore, "A equals C." "The person who lived in the apartment was Cardwell."

At the conclusion of the suppression hearing itself, moreover, the State revealed to the hearing judge that a photograph of Cardwell had been displayed to the informant, who

was unable to make a positive identification. There was also at the suppression hearing an inquiry into and a last-minute disclosure by the State of the fact that the named lessee of the apartment was not Cardwell. In the very forum of the suppression hearing, therefore, the appellees were developing facts that bore on the ultimate merits of the nexus. They were obviously far outside the four corners of the warrant application.

Indeed, in the middle of making his ruling on the nexus question, the hearing judge expressly engaged in *de novo* fact-finding.

> The informant does not really identify him. Given an opportunity now, I hear, to identify him by photograph, he could not. The apartment was not leased to him.

There was no mention of any deference to Judge Cahill's earlier decision to the contrary or as to whether Judge Cahill had had any substantial basis for ruling as he did. The focus was directly on exigency *per se*. It was of just such a *de novo* determination that the Supreme Court spoke in *Massachusetts v. Upton*, as it overturned the decision of the Supreme Judicial Court of Massachusetts.

> The Supreme Judicial Court also erred in failing to grant any deference to the decision of the Magistrate to issue a warrant. *Instead of merely deciding whether the evidence viewed as a whole provided a "substantial basis" for the Magistrate's finding of probable cause, the court conducted a de novo probable-cause determination.* We rejected just such after-the-fact, de novo scrutiny in *Gates.*

466 U.S. at 732–33, 104 S.Ct. 2085 (emphasis supplied).

We hold that Judge Cahill also had a substantial basis for concluding that a nexus had been established between 2801 Ashfield Drive and Cardwell.

### The Evidence Should Not Have Been Suppressed

On the ultimate question of whether a no-knock warrant should have been issued, the hearing judge obviously differed with Judge Cahill. If that difference, however, was on the

ultimate merits of whether an exigency actually existed, it was only an academic difference and should have been immaterial to the decision at hand. It should have represented the type of hypothetical situation of which we spoke in *State v. Amerman:*

> [I]t is perfectly logical and not at all unexpected that a suppression hearing judge might say, *"I myself would not find probable cause* from these circumstances; *but that is immaterial. I cannot say that the warrant-issuing judge who did find probable cause* from them *lacked a substantial basis to do so;* and *that is material."* There is a Voltairean echo, "I may disagree with what you decide but I will defend with my ruling your right to decide it."

84 Md.App. at 464, 581 A.2d 19 (emphasis supplied).

We hold that Judge Cahill had a substantial basis for including the no-knock provision in the search warrant and that the warrant, therefore, should not have been ruled invalid. The suppression order will be vacated and the cases will be remanded for trial.

It is important to note, however, not only what we hold, but what we do not hold. The suppression hearing judge was not persuaded that sufficient exigency had been shown to justify a no-knock entry. We are not holding that that was necessarily a bad call.[3] We are holding simply that it was not his call to make.

### Good Faith Reliance on the Warrant

■ Our alternative holding, or second line of defense, is well nigh automatic in cases where there is a genuine dispute over the adequacy of a warrant. It is resort to the "good faith" exception to *Mapp's* exclusionary rule, first recognized by *Massachusetts v. Sheppard,* 468 U.S. 981, 104 S.Ct. 3424, 82 L.Ed.2d 737 (1984), and *United States v. Leon,* 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).

---

**3.** In that regard, we intimate nothing. It is an issue that we have not even considered because, just as with the suppression hearing judge, it is not our call to make.

The animating principle is simple. If the police officer does what the Supreme Court has been begging officers to do for forty years, to eschew a unilateral decision to intrude on a citizen's liberty and to refer that decision to the disinterested judgment of a neutral and detached judicial figure, the officer has been preeminently reasonable. Because the only purpose of the exclusionary rule is to deter unreasonable police behavior, it would achieve no deterrent effect, reasoned *Sheppard* and *Leon*, to punish a reasonable officer for a judge's arguable mistake.

The luxury of being able to rely on the "good faith" exception is one of the strongest incentives the Supreme Court has provided for the police officer to resort to the favored investigative modality of obtaining a search warrant. This Court referred to this powerful incentive in *Herbert v. State*, 136 Md.App. at 488, 766 A.2d 190:

> A second strong incentive for searching with warrants is the almost "fail-safe" security of being able to fall back on the "good faith" exception to the Exclusionary Rule. *Even when the warrant is bad, the mere exercise of having obtained it will salvage all but the rarest and most outrageous of warranted searches.* The "good faith" exception, by contrast, is almost universally unavailable in warrantless contexts. *Under the Sheppard–Leon "good faith" exception to the Exclusionary Rule, it is hard for the State to lose a suppression hearing.* It is equally hard to figure out why the State would not do everything in its power to exploit that overwhelming advantage whenever possible.

(Emphasis supplied).

In *Davis v. State*, 144 Md.App. at 158, 797 A.2d 84, Chief Judge Murphy surveyed the national case law, state and federal, and expressly held that the "good faith" exception is applicable to no-knock provisions:

> Thus far, Maryland courts have only applied the good faith exception to search warrants later deemed to be invalid as lacking probable cause. We are persuaded that *the good*

*faith exception is* equally *applicable to no-knock provisions in search warrants.*

(Emphasis supplied).

Even if we did not have *Davis* to rely on,[4] the logic in favor of applying the "good faith" exception to no-knock provisions in search warrants would be compelling. Whether the decision is to enter the house generally or to knock the door down specifically, the maximizing of citizen protection in either event would prefer a neutral and detached judicial decision in such regards over a unilateral police decision. With respect to either investigative modality, if the officer defers to the judge, the officer has behaved reasonably. Chief Judge Murphy explained the ineluctable rationale.

> Suppressing evidence under these circumstances would not serve the purpose of the exclusionary rule, which is designed to deter police misconduct rather than to punish police for the errors of judges and magistrates. *When the police officers follow the proper course of conduct by seeking a no-knock search warrant, the good faith exception applies.*

144 Md.App. at 160, 797 A.2d 84 (emphasis supplied).

In this case, even if, *arguendo,* Judge Cahill had been wrong to include the no-knock provision in the search warrant (he was not), the officers executing the warrant were nonetheless entitled to rely in "good faith" on the warrant's presumptive validity. For yet a second reason, the exclusion of the evidence obtained in the search was improper.

---

4. The only feeble response the appellees made to the "good faith" argument based on *Davis v. State* is to point out that Davis has petitioned the Court of Appeals to grant *certiorari* in the case. While it may be interesting to speculate about the anticipated shelf life of a decision of this Court, the stark reality is that, unless and until reversed or overturned, such a decision is binding precedential authority and is the law of Maryland.