PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.                                              No. 04-4108

ANTHONY SINGLETON,
            *Defendant-Appellant.*

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Richard D. Bennett, District Judge.
(CR-02-170-RDB)

Argued: February 3, 2006

Decided: March 23, 2006

Before NIEMEYER, MOTZ, and KING, Circuit Judges.

---

Affirmed in part, vacated in part, and remanded by published opinion.
Judge Motz wrote the opinion, in which Judge Niemeyer and Judge
King joined.

---

## COUNSEL

**ARGUED:** John Hanjin Chun, Assistant Federal Public Defender,
OFFICE OF THE FEDERAL PUBLIC DEFENDER, Baltimore,
Maryland, for Appellant. Craig Michael Wolff, Assistant United
States Attorney, OFFICE OF THE UNITED STATES ATTORNEY,
Baltimore, Maryland, for Appellee. **ON BRIEF:** James Wyda, Fed-
eral Public Defender, Denise C. Barrett, Assistant Federal Public

Defender, Baltimore, Maryland, for Appellant. Allen F. Loucks, United States Attorney, Baltimore, Maryland, for Appellee.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

A jury convicted Anthony Singleton of drug trafficking, possession of a firearm in relation to drug trafficking, and possession of a firearm while a felon, all on the basis of contraband found in his apartment after a no-knock search. On appeal, he challenges the district court's denial of his suppression motion, its admission into evidence of several documents, and its imposition of a sentence based upon judge-found facts. For the reasons that follow, we affirm Singleton's convictions but vacate his sentence and remand the case for resentencing.

I.

In 2001, a confidential informant told the Harford County police that two individuals known as "Eva" and "BK" were selling cocaine inside an apartment in Edgewood, Maryland. In August of that year, the informant made a controlled purchase of cocaine from "Eva" inside the Edgewood apartment. Later, police received a separate tip that two individuals known as "Eva Hall" and "BK" were selling cocaine in the area. Upon further investigation, the police discovered that one of the cars near the apartment was registered to a woman named Eva Mae Hall. The police also learned that "BK" was a pseudonym for a man named Anthony Singleton. An examination of court records revealed that Singleton had a fairly extensive arrest record, including arrests in the mid-1980s for second-degree murder and criminal possession of a weapon. In September 2001, the confidential informant made a second controlled purchase of cocaine inside the Edgewood apartment, this time from Singleton.

On September 26, 2001, the police applied for a search warrant in the Circuit Court of Harford County, alleging probable cause to believe that the inhabitants of the Edgewood apartment were selling drugs. The application also sought authorization for a no-knock entry,

averring that "any advance notice given to the occupants of the above residence would greatly diminish the chance of a safe and secure entry by law enforcement officers executing the issued search warrant." The court granted the search warrant and authorized a no-knock entry.[1]

On October 3, 2001, the confidential informant made (or attempted to make — the record is unclear) his third and final controlled purchase of cocaine in the Edgewood apartment, again from Singleton. The express purpose of this controlled purchase was to verify that Singleton still resided there.

Under Maryland law, the police had fifteen days to execute the issued warrant. On the morning of October 9, 2001, within the time permitted, law enforcement officers entered the Edgewood apartment by forcibly breaking down the door without first knocking and announcing their presence. Inside, they found Singleton, Hall, and Hall's five-year-old son, whom the police had expected to be at school. The police also found a locked safe in the apartment's bedroom that contained 42 grams of crack cocaine in the form of a crack "cookie" and over 50 plastic bags of crack; $1,400 cash separated into 14 separate $100 bundles; three plastic bags with marijuana; and a loaded Smith & Wesson 9 mm semi-automatic handgun. The police also recovered a Sprint telephone bill addressed to Singleton at the Edgewood apartment. After being read his *Miranda* rights, Singleton made several incriminating admissions to the police acknowledging his ownership and possession of the contraband.

---

[1]Not all states authorize no-knock warrants. Indeed, Maryland's support for such warrants has waxed and waned over the course of this litigation. At the time that the police obtained the warrant for the Edgewood apartment, Maryland permitted no-knock warrants. *See, e.g.*, *State v. Riley*, 147 Md. App. 113, 120-21, 807 A.2d 797, 802 (2002). In 2004, however, Maryland's highest court determined that "a judicial officer in Maryland . . . may not issue a 'no-knock' warrant." *Davis v. State*, 383 Md. 394, 427, 859 A.2d 1112, 1132 (2004). But the next year, the Maryland General Assembly stepped in and reauthorized these warrants. *See* Md. Code Ann., Crim. Proc. § 1-203 (a)(2)(ii) (West Supp. 2005)). For the purposes of this appeal, the only relevant part of this back and forth is that no-knock warrants were legal when the police requested the one at issue here.

A grand jury charged Singleton with one count of possession with intent to distribute five grams or more of crack, in violation of 21 U.S.C. § 841(a) (2000) (Count 1); one count of possession of a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c) (2000) (Count 2); and one count of possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (2000) (Count 3).

Before trial, Singleton moved to suppress the evidence seized from the Edgewood apartment, asserting that exigent circumstances did not justify the police's no-knock entry. The district court denied the motion. During trial, Singleton objected to the admission of several pieces of evidence introduced by the Government to prove that he resided in the Edgewood apartment. The district court overruled those objections. The jury convicted Singleton of all charges.

During sentencing, which occurred prior to *United States v. Booker*, 125 S. Ct. 738 (2005), the district court found that Singleton was responsible for 50 to 150 grams of crack cocaine even though the jury had only convicted Singleton of intent to distribute five grams or more of crack cocaine. The court based its calculation on the contents of the safe: namely, 42 grams of crack cocaine and $1,400 cash that the court converted into a drug quantity of at least 8 grams. The court sentenced Singleton to 188 months on Counts 1 and 3, to run concurrently, and 60 consecutive months on Count 2.[2]

## II.

Singleton initially argues that the district court improperly denied his motion to suppress the drugs and gun found in his apartment during the no-knock search. He contends that exigent circumstances did not justify the search and that the good-faith exception articulated in *United States v. Leon*, 468 U.S. 897 (1984), cannot excuse this defect. Although Singleton may be correct with respect to his first contention, his second fails.

---

[2]The government concedes that the district court erred in imposing a sentence of 188 months for Count 3. Under 18 U.S.C. § 924(a)(2) (2000), a violation of § 922(g)(1) carries a maximum penalty of 120 months.

The Fourth Amendment generally requires police officers entering a dwelling to "knock on the door and announce their identity and purpose before attempting forcible entry." *Richards v. Wisconsin*, 520 U.S. 385, 387 (1997). However, exigent circumstances — like "a threat of physical violence" to officers — may allow officers to conduct a no-knock entry. *Wilson v. Arkansas*, 514 U.S. 927, 936 (1995). We review *de novo* whether exigent circumstances excused the police's failure to follow the knock-and-announce requirement. *United States v. Mattison*, 153 F.3d 406, 410 (7th Cir. 1998).

In the application for a no-knock warrant, the police listed three reasons to suspect that knocking and announcing their presence at the Edgewood apartment would imperil them. First, they cited Singleton's criminal history, which included several arrests in the 1980s for firearms offenses, an arrest for second-degree murder in 1987, and then nothing until 2000, when Singleton was arrested for marijuana possession and importation and for driving with a revoked license.[3] Second, the application explained that the apartment was in "a known open air drug market, having a history of shootings and weapons related violence." Third, the application stated that the only way into the apartment was an open area in which the approaching police would be visible to the inhabitants of the Edgewood apartment. (The application also relied on several generalizations about the inherent violence of drug dealers, such as their tendency to own weapons and to protect their property by force.)

It is not clear that these facts sufficiently establish "a *particularized* basis to reasonably suspect that knocking and announcing would be met with violent resistance." *United States v. Grogins*, 163 F.3d 795, 798 (4th Cir. 1998) (emphasis added). Of the three specific factors cited by the police, only the first — Singleton's criminal history — distinguishes this particular search from many others that police conduct on a daily basis. The other factors alone would be insufficient to justify a no-knock search: the Fourth Amendment countenances nei-

---

[3]The warrant application did not designate which arrests led to criminal convictions. In fact, Singleton was convicted of only some of the charges: attempted robbery in 1980, attempted second-degree murder and criminal possession of a weapon in 1987, and driving with a revoked license in 2000.

ther a blanket rule allowing no-knock searches for drug investigations, *see Richards*, 520 U.S. at 394, nor a marginally narrower rule allowing no-knock searches for drug investigations in dangerous neighborhoods.

The addition of Singleton's criminal history does not decisively tip the balance toward forgoing the knock-and-announce requirement. Singleton may have had a rough past, but his history of violence ended (as far as the police knew) in 1987, with his conviction for second-degree murder. He then managed to avoid violating the law for fourteen years, until he again ran into trouble in 2000 — but even then he was only convicted of driving with a revoked license. Furthermore, the police had no contemporary evidence that Singleton owned a firearm — even though the confidential informant had been in the Edgewood apartment several times. *Cf. United States v. Smith*, 386 F.3d 753, 759-60 (6th Cir. 2004) (insufficient exigent circumstances even when confidential informant tells police that firearms are present). Given the lack of any contemporary evidence that Singleton might prove violent to police, it is unclear whether the police reasonably believed that knocking and announcing their presence would be dangerous.

However, we need not resolve this question because the police reasonably relied in good faith upon a properly obtained search warrant that specifically authorized a no-knock search. More than twenty years ago, the Supreme Court held that "reliable physical evidence seized by officers reasonably relying on a warrant issued by a detached and neutral magistrate . . . should be admissible in the prosecution's case in chief," even if the warrant is ultimately found to be defective. *Leon*, 468 U.S. at 913. "The good-faith exception is perfectly suited for cases like this, when the judge's decision was borderline." *United States v. Scroggins*, 361 F.3d 1075, 1084 (8th Cir. 2004).

Although neither the Supreme Court nor this Court has previously held that the *Leon* good-faith exception applies to a no-knock warrant, we see no persuasive reason not to apply *Leon* to the warrant at issue here. Given that the Constitution allows no-knock warrants, *see United States v. Banks*, 540 U.S. 31, 36 (2003), we believe that applying the good-faith exception here is most consistent with the "strong

preference for warrants." *Leon*, 468 U.S. at 914. As the Supreme Court has explained, "the detached scrutiny of a neutral magistrate . . . is a more reliable safeguard against improper searches than the hurried judgment of a law enforcement officer engaged in the often competitive enterprise of ferreting out crime." *United States v. Chadwick*, 433 U.S. 1, 9 (1977) (internal quotation marks omitted). When officers suspect ahead of time that knocking and announcing their presence would imperil them or risk the destruction of evidence, they minimize the risk of violating the Fourth Amendment if they obtain prior judicial approval for a no-knock entry.

In addition, applying the exclusionary rule here despite reasonable reliance on a no-knock warrant would not help deter future police misconduct. When an officer in good faith seeks prior judicial approval for a no-knock warrant, he is already doing the most that he can — at least prior to the search — to ensure that the no-knock entry will comply with the Fourth Amendment. There is "nothing to deter" in such situations. *Leon*, 468 U.S. at 921. Even if the no-knock warrant turns out to be unjustified, "[p]enalizing the officer for the magistrate's error, rather than his own, cannot logically contribute to the deterrence of Fourth Amendment violations." *Id.* Thus, the evidence produced by the no-knock search of the Edgewood apartment is admissible under *Leon*'s good-faith exception.

We note that, in reaching this conclusion, we join every other circuit to consider the question — all have held that the *Leon* good-faith exception applies to no-knock warrants in situations like the one at hand. *See, e.g.*, *Scroggins*, 361 F.3d at 1083; *United States v. Dumes*, 313 F.3d 372, 381 (7th Cir. 2002); *United States v. Tisdale*, 195 F.3d 70, 73 (2d Cir. 1999); *United States v. Hawkins*, 139 F.3d 29, 32 (1st Cir. 1998); *United States v. Moore*, 956 F.2d 843, 851 (8th Cir. 1992); *cf. United States v. Nielson*, 415 F.3d 1195, 1203 (10th Cir. 2005) (applying *Leon* but finding that warrant affidavit was too deficient).

The only contrary argument that Singleton offers is that applying *Leon* to no-knock warrants would be inconsistent with the principle that police "are obligated to assess exigent circumstances at the time they execute the warrant." Reply Brief of Appellant at 5 (citing *Richards*, 520 U.S. at 387 (holding that courts must look to whether exigent circumstances existed at the time of the entry)). Singleton may

be right that exigent circumstances must exist at the time of the search to justify a no-knock entry. *Cf. Ker v. California*, 374 U.S. 23, 40 n.12 (1963) ("It goes without saying that in determining the lawfulness of entry and the existence of probable cause we may concern ourselves only with what the officers had reason to believe *at the time of their entry*." (emphasis in original)). But police often can (and perhaps should) investigate and assess these exigent circumstances before the time of the search. As the Supreme Court has recognized, while planning for a search, police often have "reasonable grounds . . . to suspect that one or another such exigency already exists or will arise instantly upon knocking." *Banks*, 540 U.S. at 36. Particularly with preexisting exigencies (like a violent criminal history) that are unlikely to change between the issuance of a warrant and its execution, no purpose is served by requiring officers to wait until just before a search to determine whether such exigencies support a no-knock entry.[4]

### III.

Singleton next contends that two pieces of evidence admitted by the district court are hearsay: Sprint phone records (namely, bills and internal company files) on which his address was printed, and a docket from the Circuit Court of Harford County that also listed his address. The Government used this evidence to show that Singleton resided in the Edgewood apartment and therefore had constructive possession of the drugs and firearm found inside. Even assuming that both the phone and docket records were hearsay, we find their admission harmless. *See United States v. Iskander*, 407 F.3d 232, 240 (4th Cir. 2005).

---

[4]In this case, Singleton concedes that the facts cited in the affidavit were accurate both when the police applied for the warrant and when they conducted the actual search. Thus, we need not resolve the question of whether police may rely on a no-knock warrant under *Leon* if the exigent circumstances cited in the warrant affidavit have changed between the issuance of the warrant and the actual search. *Cf. Commonwealth v. Scalise*, 439 N.E.2d 818, 823 (Mass. 1982) ("[C]hanged circumstances would render ineffective the magistrate's decision that a no knock entry was justified.").

"A person has constructive possession over contraband when he has ownership, dominion, or control over the contraband itself or over the premises or vehicle in which it was concealed." *United States v. Armstrong*, 187 F.3d 392, 396 (4th Cir. 1999). Here, substantial evidence other than the challenged records established that Singleton had "ownership, dominion, or control" over the Edgewood apartment and the drugs and gun that were found inside. Most damningly, Singleton made a series of incriminating admissions to the police after they burst into his apartment: he admitted to the search party that he lived there and that he owned the drugs and the gun in the safe; he told the searching officers that the only contraband in the apartment was in the locked safe — a fact that the officers quickly verified; he told Eva Hall, in the presence of several officers, that he would take the blame for everything; and finally, while in jail, he told an officer that "he [couldn't] believe he did something this stupid."

These incriminating statements provided the basis for the Government's case against Singleton. Of course, as Singleton notes, during closing argument the Government also discussed the phone and docket records to establish his residence in the apartment. But the Government spent at least as much, if not more, time emphasizing Singleton's various admissions about living in the apartment and owning the drugs and gun in the safe. *See* J.A. 238F (Singleton told Hall that he would take the blame), 238G (Singleton admitted that the drugs and the gun were his; Singleton said, "I can't believe I did something this stupid"), 238L-M (Singleton said he would take all the blame), 238N (Singleton correctly told officers that everything was in the safe; Singleton said he did something stupid), 238O (summarizing the evidence with a heavy focus on Singleton's admissions). Indeed, the Government ended its closing argument by telling the jury, "[Singleton's] own statements . . . by themselves are enough to demonstrate his guilt beyond a reasonable doubt." In light of the Government's heavy reliance on Singleton's admissions, even if the phone and docket records were inadmissible hearsay, their admission provides no basis for reversal.

IV.

Finally, Singleton argues that his pre-*Booker* sentence was unconstitutionally based on judicial findings of drug quantity. The Govern-

ment concedes that there was plain Sixth Amendment error. We agree. Because the district court found that Singleton intended to distribute between 50 and 150 grams of crack, it assigned Singleton an offense level of 32, which, combined with Singleton's criminal history category of V, corresponded to a sentencing range of 188 to 235 months. U.S. Sentencing Guidelines Manual § 2D1.1 (2002). However, based solely on the drug quantity alleged in the indictment and proven to the jury beyond a reasonable doubt — namely, five grams of crack — Singleton would be assigned an offense level of only 26, leading to a sentencing range of 110 to 137 months. Because Singleton's sentence of 188 months for his drug-trafficking conviction exceeds the maximum sentence authorized without judge-found facts, we vacate and remand his sentence. *United States v. Hughes*, 401 F.3d 540, 547 (4th Cir. 2005). We affirm his conviction for the reasons given above.

*AFFIRMED IN PART, VACATED IN PART,*
*AND REMANDED*