**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 07-4922**

_____

UNITED STATES OF AMERICA,

Plaintiff - Appellant,

v.

DARIUS LAMONT GALLOWAY,

Defendant - Appellee.

_____

Appeal from the United States District Court for the Eastern District of North Carolina, at Wilmington.  James C. Fox, Senior District Judge.  (7:07-cr-00036-F)

_____

Argued:  March 18, 2008          Decided:  April 17, 2008

_____

Before Sandra Day O'CONNOR, Associate Justice (Retired), Supreme Court of the United States, sitting by designation, WILLIAMS, Chief Judge, and HAMILTON, Senior Circuit Judge.

_____

Vacated and remanded by unpublished per curiam opinion.

_____

**ARGUED:** Anne Margaret Hayes, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.  Debra Carroll Graves, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee. **ON BRIEF:** George E. B. Holding, United States Attorney, Jennifer P. May-Parker, Assistant United States Attorney, OFFICE OF THE UNITED STATES ATTORNEY, Raleigh, North Carolina, for Appellant.  Thomas P. McNamara, Federal Public Defender, Stephen C. Gordon, Assistant Federal Public Defender, Eric J. Brignac, Research and Writing Specialist, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Raleigh, North Carolina, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

The government appeals the district court's order suppressing several inculpatory statements made by defendant Darius Lamont Galloway (Defendant) following his warrantless arrest on various drug and gun charges. Pursuant to Defendant's motion, the district court suppressed the post-arrest inculpatory statements based upon its legal conclusion that the police officers lacked probable cause to arrest Defendant, and therefore, Defendant's post-arrest inculpatory statements were suppressible as fruits of the poisonous tree.

Because we conclude probable cause supported Defendant's arrest, we hold Defendant's post-arrest inculpatory statements were not suppressible as fruits of the poisonous tree. Accordingly, we vacate the district court's suppression order and remand for further proceedings consistent with this opinion.

I.

The following facts are largely derived from the district court's suppression order, none of which we find clearly erroneous. In January 2006, Detective Heath Little of the Columbus County, North Carolina Sheriff's Department (Detective Little) received a telephone call from a man named Brent Best (Best). At the time, Detective Little had known Best for five to six years, and Best had proven to be a reliable informant to law enforcement in the past

regarding illegal drug trafficking activity in the area. During the call, Best informed Detective Little that Defendant had been selling illegal drugs from his (Best's) home, located at 578 Spring Hill Drive, Whiteville, North Carolina. In addition to Best's tip concerning Defendant's illegal drug trafficking, a second informant, this one confidential and unidentified, contacted Detective Little and confirmed that Defendant had been selling illegal drugs at Best's residence.[1]

Although Detective Little promptly passed on this information regarding Defendant to his immediate supervisor, Sergeant Steve Worthington (Sergeant Worthington), Detective Little did not act upon it until the early afternoon of February 2, 2006, when he and Sergeant Worthington paid a visit to Best's residence. The visit was prompted by Detective Little witnessing Defendant earlier that same morning driving a Honda Accord following directly behind Best, who was driving a white Toyota truck.

Upon arriving at Best's residence, a single wide mobile home located in an open field, Detective Little and Sergeant Worthington saw Best's white Toyota truck and Defendant's Honda Accord parked in the backyard. Defendant was seated in the passenger side of Best's truck with the door open, his right foot on the ground, and

---

[1]Defendant was familiar to Detective Little, because Detective Little had previously arrested Defendant in December 2004 on charges undisclosed in the record. During a suppression hearing concerning such charges, Defendant alleged that Detective Little had used excessive force during the arrest.

moving his hands near the floorboard of the truck. The officers saw a third individual, John Ford, standing in the front yard of Best's residence. Detective Little exited the vehicle and approached Best, while Sergeant Worthington exited the vehicle and approached Defendant. Neither officer spoke with Ford.

Best consented to a search of his residence and his white Toyota truck. Detective Little and Best then entered the residence, where Detective Little noticed a strong odor of marijuana. Detective Little asked Best whether there were any illegal drugs in the residence or if marijuana had recently been used. Best responded in the negative to both questions. Upon searching the residence, Detective Little found scales and a box of plastic bags.

When Sergeant Worthington approached Defendant, he explained that the officers were there to conduct an investigation regarding possible illegal drug trafficking. Sergeant Worthington, who knew Defendant from their high school days, walked toward the rear of Best's residence. As they did so, Defendant explained that he needed to set things straight and wanted to speak with Detective Little. At the same time, Defendant denied having any illegal drugs on his person or in his Honda Accord.

Sergeant Worthington and Defendant then entered Best's residence, where Detective Little and Best were still located. The officers then asked Best to step outside, which he did. Sergeant

Worthington also went outside to search Best's white Toyota truck. At this point, Defendant spontaneously told Detective Little that he wanted to do the right thing and desired to work with law enforcement officers to set someone up. Defendant appeared nervous and was sweating. A consensual search of Defendant's vehicle turned up no contraband.

Meanwhile, Sergeant Worthington searched Best's white Toyota truck and found a paper bag containing marijuana on the dashboard and a holstered handgun under the front passenger seat where Defendant had been sitting and moving his hands around when the officers pulled up at Best's residence. Armed with this newly discovered contraband, Sergeant Worthington went back inside Best's residence, whereupon he showed the contraband to both Detective Little and Defendant. As soon as Defendant saw the paper bag containing the marijuana and the holstered handgun, he shook his head and reiterated that he wanted to make things right and cooperate with law enforcement.

At this point, Sergeant Worthington placed Defendant in handcuffs, but told him that he was not under arrest. Sergeant Worthington then went back outside to finish searching Best's white Toyota truck. The search uncovered yet more evidence of illegal drug trafficking activity under the front passenger seat. Specifically, Sergeant Worthington found a Crown Royal bag containing cocaine base (crack) and cocaine powder.

Thereafter, the officers arrested Defendant and Mirandized him.  See Miranda v. Arizona, 384 U.S. 436 (1966).  After signing a written waiver of rights form, Defendant made inculpatory statements, including admissions that he purchased the illegal drugs found during the search of Best's white Toyota truck from an individual named Big Mike in Robeson County and that he had a deal with Big Mike on a weekly basis where he would buy "what they call a big eight, which is four and a half ounces of cocaine."  (J.A. 37).

At the time of the June 2007 suppression hearing in this case, Detective Little had been employed by the Columbus County Sheriff's Office for seven years, and had been a narcotics detective for four years.  Sergeant Worthington had been employed by the Columbus County Sheriff's Office for eight years and had been conducting narcotics investigations for approximately six years.

A federal grand jury charged Defendant by superseding indictment with possession of fifty grams or more of a mixture containing crack and unspecified quantities of cocaine and marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1); possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1); and possession of a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A).

Defendant moved to suppress his post-arrest inculpatory statements on the ground that such statements constituted the tainted fruits of his unlawful arrest in violation of the Fourth Amendment. Following the filing of further motion papers and an evidentiary hearing on the matter, the district court granted Defendant's suppression motion and denied the government's subsequent motion for reconsideration. The district court concluded that Defendant's arrest was not supported by probable cause. First, the district court concluded that the tips provided to Detective Little by Best and the other confidential informant, which tips the district court characterized as vague, were "not substantially corroborated by the officers' observations and did not establish probable cause." (J.A. 83). The district court emphasized that the illegal drugs and holstered handgun were found in Best's white Toyota truck and concluded that "[i]t was not reasonable to believe that [Defendant] had possessed [the] narcotics and [the] firearm." (J.A. 84). Additionally, the district court reasoned that Defendant's "nervousness and comments regarding his desire to 'do the right thing'" could be explained by his "prior interaction with Detective Little." (J.A. 84). Ultimately, the district court concluded: "Under the totality of the circumstances, the officers' assumption [that Defendant possessed the illegal drugs and the holstered firearm] did not

amount to probable cause to arrest [Defendant] for actual or constructive possession of the firearm and narcotics." Id.

The government now appeals the district court's order granting Defendant's motion to suppress his post-arrest inculpatory statements, seeking vacature of such order and a remand for further proceedings.

## II.

The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. Under well settled case law, Defendant's warrantless arrest at issue in this appeal was permissible under the Fourth Amendment if probable cause existed for the officers to reasonably believe that he had committed a felony. Maryland v. Pringle, 540 U.S. 366, 370 (2003); Wong Sun v. United States, 371 U.S. 471, 479 (1963).

Here, Defendant's warrantless arrest was premised upon his possession of the holstered handgun found under the passenger seat of Best's white Toyota truck in furtherance of a drug trafficking crime, 18 U.S.C. § 924(c)(1)(A), his possession of the same firearm

while in his status as a convicted felon, id. § 922(g)(1), and his possession of the illegal drugs found under the passenger seat of Best's white Toyota truck, and in the paper bag on the dash board, with the intent to distribute, 21 U.S.C. § 841(a)(1). On appeal, the government does not dispute that if probable cause to arrest Defendant was lacking, his post-arrest inculpatory statements were suppressible as tainted fruits of the poisonous tree. See United States v. McCraw, 920 F.2d 224, 227 (4th Cir. 1990) (admissibility of post-arrest inculpatory statements by defendant are dependent upon legality of defendant's arrest). Thus, the sole issue in this appeal is whether probable cause existed to arrest Defendant. In reviewing a district court's decision regarding a motion to suppress, we review legal conclusions de novo and factual findings for clear error. United States v. Brown, 401 F.3d 588, 592 (4th Cir. 2005).

At least with respect to the § 922(g)(1) offense and the 21 U.S.C. § 841(a)(1) offense, each can be proven under the theory of constructive possession.[2] United States v. Singleton, 441 F.3d 290, 295-96 (4th Cir. 2006) (possession under § 841(a)(1) can be actual or constructive); United States v. Scott, 424 F.3d 431, 435 (4th Cir. 2005) (possession under § 922(g)(1) can be actual or constructive). A person has constructive possession of an item as

---

[2]We have not yet decided in a published opinion whether a constructive possession instruction can be given on a § 924(c)(1) charge.

opposed to actual possession of an item if he knows of its presence and exercises or has the power to exercise dominion or control over it. Scott, 424 F.3d at 435. Intent to distribute may be inferred if the amount of illegal drugs found in the defendant's possession exceeds an amount normally associated with personal consumption. United States v. Wright, 991 F.2d 1182, 1187 (4th Cir. 1993).

Whether probable cause existed for Defendant's warrantless arrest depends upon the totality of the circumstances surrounding his arrest. Illinois v. Gates, 462 U.S. 213, 230-32 (1983); Taylor v. Waters, 81 F.3d 429, 434 (4th Cir. 1996). "'[P]robable cause' to justify an arrest means facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." Michigan v. DeFillippo, 443 U.S. 31, 37 (1979); see also United States v. Gray, 137 F.3d 765, 769 (4th Cir. 1998). While probable cause is a higher standard than reasonable suspicion, it is a lesser standard than the one necessary to convict, i.e., beyond a reasonable doubt. See Wong Sun, 371 U.S. at 479.

Determining whether the information surrounding an arrest is sufficient to establish probable cause is an individualized and fact-specific inquiry. Id. Additionally, law enforcement officers are permitted "to draw on their own experience and specialized

training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." United States v. Arvizu, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). "[E]ven 'seemingly innocent activity' when placed in the context of surrounding circumstances," can give rise to probable cause. United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004) (citation omitted). This means that courts cannot engage "in the sort of 'divide-and-conquer analysis' that treats each action by a defendant in isolation, finds each of them to be possibly innocent, and thus picks apart an officer's reasonable assessments." United States v. Perkins, 363 F.3d 317, 327 (4th Cir. 2004).

Moreover, despite the individualized and fact-specific nature of the probable cause inquiry, we must be mindful that probable cause is an objective standard, with the subjective intentions of the arresting officer or officers being immaterial in determining whether his or their actions were reasonable for Fourth Amendment purposes. See Devenpeck v. Alford, 543 U.S. 146, 153 (2004) ("Our cases make clear that an arresting officer's state of mind (except for the facts that he knows) is irrelevant to the existence of probable cause."). The reason for this rule is that "evenhanded law enforcement is best achieved by the application of objective standards of conduct, rather than standards that depend upon the

- 12 -

subjective state of mind of the officer." Horton v. California, 496 U.S. 128, 138 (1990).

We hold the district court committed reversible error in concluding that Defendant's arrest was not supported by probable cause. The factual findings of the district court, when viewed through the eyes of trained law enforcement officers and in the totality of the circumstances, amount to probable cause that Defendant had committed at least one felony crime, for example, possession with intent to distribute cocaine: (1) within the few weeks leading up to Defendant's arrest on February 2, 2006, Detective Little received a telephone tip from a known, reliable informant (i.e., Best), whom Detective Little had known for five to six years, that Defendant had been selling illegal drugs from his (the reliable informant's) residence at 578 Spring Hill Drive in Whiteville, North Carolina; (2) after Detective Little's conversation with the known, reliable informant, but before Defendant's arrest in this case, a second informant, this one confidential and unidentified, also told Detective Little that Defendant had been selling illegal drugs at the known, reliable informant's residence; (3) on the morning of February 2, 2006, Detective Little witnessed Defendant driving a Honda Accord while immediately following a white Toyota truck driven by the known, reliable informant; (4) when, in the early afternoon of the same day, Detective Little and Sergeant Worthington arrived at the

residence of the known, reliable informant in an unmarked police car, the officers saw both the white Toyota truck and the Honda Accord parked in the backyard; (5) the officers also saw Defendant seated in the passenger side of the white Toyota truck, with the door open, his right foot on the ground, and moving his hands around near the floorboard; (6) the known, reliable informant was standing in the yard with another man (John Ford); (7) with the permission of the known, reliable informant, Detective Little entered Best's residence and smelled a strong odor of marijuana, thus confirming the presence of illegal drugs; (8) upon a consensual search of the reliable informant's residence, Detective Little found scales and a box of plastic bags, items commonly used in packaging illegal drugs for retail distribution; (9) Sergeant Worthington told Defendant that he and Detective Little were there to conduct an investigation into possible drug trafficking; (10) a short time later, Defendant told Detective Little that he wanted to do the right thing and desired to set someone up; (11) although a consensual search of Defendant's vehicle turned up no evidence of illegal drug trafficking, a consensual search of the known, reliable informant's white Toyota truck revealed a holstered handgun and a Crown Royal bag containing crack and powder cocaine under the same front passenger seat in which Defendant had been sitting when the officers arrived on the scene; (12) a consensual search of the white Toyota truck also revealed a paper bag

containing marijuana located on the dashboard; and (13) after Defendant was shown the paper bag containing marijuana and the holstered handgun, "he shook his head and reiterated that he wanted to make things right and cooperate with law enforcement," (J.A. 82).

Without question, Supreme Court and Fourth Circuit precedent support the legal conclusion that, at a minimum, probable cause to arrest Defendant for illegal drug trafficking existed in this case. Under the circumstances at the time of Defendant's arrest, a reasonable law enforcement officer in the position of Detective Little would consider the initial tip from Best that Defendant was engaging in illegal drug trafficking at 578 Spring Hill Drive in Whiteville, North Carolina reasonably trustworthy. Hunter v. Bryant, 502 U.S. 224, 228 (1991) (probable cause to arrest is measured at the moment the arrest occurs). Best was known to Detective Little, thus Best's reputation could be assessed, and Best could be held responsible for false allegations. Florida v. J.L., 529 U.S. 266, 270 (2000) (known informant's reputation can be assessed and can be held responsible if allegations turn out to be fabricated). Moreover, Best had proven to be a reliable source of information about illegal drug trafficking activity in the past. Id.; United States v. Bynum, 293 F.3d 192, 197 (4th Cir. 2002) ("The Supreme Court has repeatedly recognized that a proven, reliable informant is entitled to far more credence than an

unknown, anonymous tipster."). And finally, because Best was reporting that Defendant's drug trafficking took place in his (Best's) own home, it was obvious to the arresting officers that Best's report of Defendant's drug trafficking was based upon personal knowledge, which is inherently more reliable than a report based upon hearsay. Cf. Perkins, 363 F.3d at 325 (need to focus on predictive information in order to corroborate an anonymous tip does not exist in case where anonymous tipster was clearly in a position to know about reported activity that gave rise to officer's reasonable suspicion).

Moreover, in several significant respects, the officers corroborated Best and the unidentified, confidential informant's tips regarding Defendant's illegal drug trafficking activities at Best's residence. Specifically, the officers: (1) corroborated a relationship connection between Defendant and Best based upon Detective Little observing Defendant following Best's white Toyota truck on the morning of February 2, 2006, and then both officers observing Defendant at Best's residence in the early afternoon of the same day; (2) corroborated Defendant's connection to illegal drug trafficking by discovering illegal drugs and a holstered handgun, typically used in drug trafficking, under the passenger seat of Best's white Toyota truck when the officers had minutes earlier observed Defendant sitting in the passenger seat of the same truck with his right foot on the ground while moving his hands

around in the floorboard; (3) corroborated Defendant's connection to illegal drug trafficking by discovering scales and plastic baggies, tools of the illegal drug trafficking trade, in Best's residence, where Best and the unidentified confidential informant reported that Defendant had been conducting his illegal drug trafficking activities; and (4) corroborated Defendant's connection to illegal drug trafficking when Defendant told Detective Little that he wanted to do the right thing and desired to set up someone.

This last point of corroboration is extremely important in the common sense analysis inherent in determining the existence of probable cause. Common sense dictates the fact that Defendant voluntarily stood-at-the-ready to conduct an undercover sting operation in order for law enforcement officers to catch others involved in illegal drug trafficking in the surrounding area is compelling evidence of Defendant's connection to the same world. Obviously, an offer to set up others in an undercover sting operation shows consciousness of guilt. See United States v. Levy, 578 F.2d 896 (2d Cir. 1978) (testimony concerning offers by defendant, arrested on drug charges, to cooperate in the future evidenced consciousness of guilt and was relevant to prove charge against him); see also Illinois v. Hart, 828 N.E.2d 260, 269 (Ill. 2005) (citing Levy with approval).

In our view, the district court went astray in two significant respects. First, the district court essentially ignored the import

of all the above listed evidence showing corroboration of the informants' tips. Second, the district court engaged "in the sort of 'divide-and-conquer analysis' that treats each action by a defendant in isolation, finds each of them to be possibly innocent, and thus picks apart an officer's reasonable assessments." Perkins, 363 F.3d at 327. For example, the district court concluded that "given Galloway's prior interaction with Detective Little, it was not reasonable to believe that Galloway's nervousness and comments regarding his desire to 'do the right thing' suggested that Galloway had possessed a firearm and narcotics at Best's residence."[3] (J.A. 84). The conclusion incorrectly ignores the fact that when Defendant told Detective Little that he wanted to do the right thing he did so while also informing Detective Little that he wanted to set up someone. The district court obviously erroneously ignored the critical context of Defendant's desire to do the right thing, which context shows Defendant's consciousness of guilt. See United States v. Humphries, 372 F.3d 653, 657 (4th Cir. 2004) ("[E]ven 'seemingly innocent activity' when placed in the context of surrounding circumstances," can give rise to probable cause.) (citation omitted). No other explanation makes sense.

---

[3]The prior interaction reference refers to Defendant's prior allegation that Detective Little had used excessive force against him.

Defendant makes two primary arguments in defense of the district court's granting of his suppression motion. First, Defendant argues that probable cause to arrest him could not have existed because the officers failed to conduct further investigation in order to determine whether the holstered handgun and/or the illegal drugs found in Best's white Toyota truck belonged to Best or Ford. This argument is without merit, because once probable cause to arrest a suspect is established, an officer is not required to continue to investigate for exculpatory evidence before arresting such suspect. Cortez v. McCauley, 478 F.3d 1108, 1121 n.18 (10th Cir. 2007); McKinney v. Richland County Sheriff's Dept., 431 F.3d 415, 418-19 (4th Cir. 2005) ("The fact that [the officer] did not conduct a more thorough investigation before seeking the arrest warrant does not negate the probable cause established by the victim's identification."); Curley v. Village of Suffern, 268 F.3d 65, 70 (2d Cir. 2001) ("We observed that once a police officer has a reasonable basis for believing there is probable cause, he is not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest. Although a better procedure may have been for the officers to investigate plaintiff's version of events more completely, the arresting officer does not have to prove plaintiff's version wrong before arresting him.") (internal alteration, internal citation and internal quotation marks omitted)); Kelley v. Myler, 149 F.3d 641,

647 (7th Cir. 1998) ("The inquiry is whether an officer has reasonable grounds on which to act, not whether it was reasonable to conduct further investigation.").

Defendant's other primary argument is that the Fourth Circuit's decision in United States v. Blue, 957 F.2d 106 (4th Cir. 1992), mandated the granting of his motion to suppress. Defendant is clearly wrong. Blue, in fact, supports our holding that probable cause to arrest Defendant existed in this case because Blue was a sufficiency-of-the-evidence case as opposed to a probable-cause case. In Blue, a police officer, who was conducting nighttime surveillance of a house for possible illegal drug activity, saw two men leave the house and enter a parked car on the street. Id. at 107. As the car drove by, the officer noticed that neither occupant was wearing a seatbelt, in violation of North Carolina law. Id. The officer pulled over the car in a well lit area, allegedly to investigate the seatbelt violation. Id. As he left his car, the officer saw the shoulder of the passenger, defendant Herbert Blue, "dip as if the passenger were reaching under the seat with his right hand." Id. After the driver and defendant Blue exited the car, the officer searched defendant Blue for any weapons, "at which time he discovered a needle, a syringe, and a small amount of heroin, and therefore placed Blue under arrest." Id. A consensual search of the car revealed a loaded handgun under the passenger seat. Id. Both the driver and

defendant Blue denied knowledge or ownership of the handgun.  Id. The car did not belong to defendant Blue, and there was no evidence that defendant Blue had ever before been in the car.  Id. at 108.

Defendant Blue was charged with, inter alia, possession of a firearm by a convicted felon, and the jury convicted him.  Id.  On appeal, defendant Blue challenged the sufficiency of the evidence to support his § 922(g)(1) conviction.  The government had relied on two pieces of evidence to support its case:  (1) the officer's testimony that defendant Blue's shoulder dipped as he approached the vehicle, and (2) the discovery of the handgun under the passenger seat.  Id.  The Fourth Circuit concluded that this evidence was insufficient to support defendant Blue's § 922(g)(1) conviction:

> Beyond [the officer's] claim that he saw Blue's shoulder dip and the discovery of the pistol underneath the passenger seat, the government did not substantiate its case against Blue.  It did not produce fingerprints or any other physical evidence which would link Blue with the gun.  The government introduced no evidence demonstrating that Blue owned the gun or testimony that Blue had been seen with the gun.  The car in which the gun was found did not belong to Blue; in fact, no evidence indicated that Blue had ever been in that car before. Without more evidence than that proffered by the government, we cannot sustain Blue's conviction.

Id.

Of particular relevance in the present appeal, the Blue court went on to declare that, while it remained convinced that Blue's shoulder dip alone did not transform Blue from a mere passenger in the car to a possessor of whatever was discovered underneath the

- 21 -

seat in which he is sitting: "In reaching this decision, we emphasize that the facts of this case fall outside, **but just barely**, the realm of the quantum of evidence necessary to support a finding of constructive possession." Id. at 108. (emphasis added). This statement by the Blue court is notable, because not only was the burden of proof in Blue (i.e., beyond reasonable doubt) far more onerous than the probable cause standard at issue in the present appeal, additional circumstances pointing to Defendant's involvement in drug trafficking, such as the information from the reliable, known informant and Defendant's multiple offers of cooperation with law enforcement, exist in the present appeal, which did not exist in Blue.

In sum, we: (1) vacate the district court's orders which, when taken together, granted Defendant's suppression motion; and (2) remand this case for further proceedings consistent with this opinion.

VACATED AND REMANDED