WYNN, Circuit Judge,
dissenting in part:
Qualified immunity gives law enforcement officers the benefit of the doubt when preexisting law would not make clear to a reasonable officer that his actions are unlawful. See Hope v. Pelzer, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002). Officers are “liable for transgressing bright lines” but not for making “bad guesses in gray areas.” Campbell v. Galloway, 483 F.3d 258, 271 (4th Cir.2007) (quotation marks omitted).
In this case, police officers performed a no-knock entry into the home of someone suspected of sexual exploitation of a minor based on the officers’ belief that a child victim and multiple firearms were in the home. I join the majority in concluding that the no-knock entry here was unlawful. As a result of this case, the law will be clearly established as to any similar entries in the future. I cannot conclude, however, that prior Supreme Court or Fourth Circuit case law dearly established that the no-knock entry was unlawful under the circumstances these officers confronted. On that basis, I must respectfully dissent.
When the officers executed the no-knock entry in 2007, it was clearly established that they “must have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence.” Richards v. Wisconsin, 520 U.S. 385, 394, 117 S.Ct. 1416, 137 L.Ed.2d 615 (1997). It was also clearly established that a reasonable suspicion is “a minimal level of objective justification.” United States v. Sokolow, 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).
The reasonableness of the officers’ asserted suspicion of danger is assessed based upon the information the officers possessed at the time they entered. Ker v. California, 374 U.S. 23, 41 n. 12, 83 S.Ct. 1623,10 L.Ed.2d 726 (1963). Thus, it is critical to examine thoroughly what the officers knew at the time of entry to determine whether “pre-existing law [made] the unlawfulness [of the no-knock entry] apparent.” Hope, 536 U.S. at 739, 122 S.Ct. 2508; see also DiMeglio v. Haines, 45 F.3d 790, 804 (4th Cir.1995) (“The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.”).
Here, at the time of the no-knock entry, the officers knew that Mr. Bellotte printed and attempted to purchase pornographic pictures at a Wal-Mart on the morning of May 31, 2007. When asked by the cashier to inspect the photographs according to store policy, Mr. Bellotte resisted and admitted that some of the photographs contained nudity. After some escalation, Mr. Bellotte surrendered the photographs, adamant that they should be destroyed without inspection. While shredding the photographs, a Wal-Mart employee was alarmed by what appeared to be an adult’s penis beside a young girl’s face. Three other Wal-Mart employees, including two managers, also believed they saw a child in the photograph, so they decided to call police.
At least two Virginia police officers also believed a child was depicted in the photograph. According to the Virginia officers’ police report, the photograph depicted “an approximately five to six year old white female being forced towards what appeared to be a male adult penis.” Using Wal-Mart’s camera surveillance and credit card records, the Virginia officers deter *429 mined that the man who attempted to purchase the photographs was Mr. Bellotte.
In the later morning hours of May 31, the case was transferred to West Virginia law enforcement, and Detective Tracy Lynn Edwards assumed the role of lead investigating officer. After Detective Edwards concluded her assistance to federal agents in an unrelated child pornography investigation, law enforcement began investigating Mr. Bellotte for possession of child pornography and suspected sexual exploitation of a minor. The officers then determined that Mr. and Mrs. Bellotte possessed concealed carry permits. The officers therefore believed that the Bellottes had multiple firearms in their home.
Believing that the situation was urgent, Detective Edwards completed an application for a search warrant for the Bellottes’ home around 7:30 P.M. on May 31. The suspected crime cited in the search warrant application was not possession of child pornography, but rather use of a minor in filming sexually explicit conduct, undoubtedly a form of sexual child abuse. See W. Va.Code § 61-8C-2(a) (“Any person who causes or knowingly permits, uses, persuades, induces, entices or coerces such minor to engage in or uses such minor to do or assist in any sexually explicit conduct shall be guilty of a felony when such person has knowledge that any such act is being photographed or filmed.”). The magistrate reviewed and signed the warrant between 8:30 and 9:00 P.M.
Detective Edwards believed execution of the search warrant presented a high risk of danger for essentially two reasons:
I believed that the Bellottes had weapons. I also believed that this child existed at their residence, even though I didn’t know if it was a neighbor’s child or if it was their child.
Child pornography — and I do feel that if, in fact, someone were responsible for kidnapping a child, that it would [be] a very dangerous situation.
Thus, Detective Edwards sought and obtained departmental approval to use a tactical special operations team, which executed a no-knock entry into the Bellottes’ home shortly after 10:00 P.M. on May 31.
At the time of entry, a magistrate had found probable cause to believe that evidence of sexual child abuse existed in the Bellottes’ home, and the officers reasonably believed that multiple firearms were in the home because of the Bellottes’ concealed carry permits. Based on this information, Detective Edwards and the other officers believed that executing this search warrant presented a high risk of danger to the entering officers and the child victim potentially located within.* If the officers’ fear of danger had been reasonable, the no-knock entry would have been lawful. Richards, 520 U.S. at 391, 117 S.Ct. 1416. I concur with the majority, however, and conclude that the officers’ fear was not sufficiently supported to justify their dynamic no-knock entry into the Bellottes’ *430 home. While the officers’ no-knock entry was unlawful, no preexisting case law dearly established the unlawfulness of their conduct under the circumstances here such that a reasonable officer would have known that he was “transgressing” a “bright line.” Campbell, 483 F.3d at 271.
Indeed, at the time of entry in this case, there was congressional and judicial emphasis on combating the harm to victims of child pornography and sexual exploitation offenses. See, e.g., New York v. Ferber, 458 U.S. 747, 757, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982) (“The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance.”); United States v. MacEwan, 445 F.3d 237, 249-50 (3d Cir.2006) (“The congressional findings underlying [18 U.S.C.] § 2251 repeatedly stress that child pornography is a form of sexual abuse which can result in physical or psychological harm, or both, to the children involved.”) (internal quotation marks omitted); see also United States v. Matthews, 209 F.3d 338 (4th Cir.2000) (rejecting a First Amendment bona fide reporter defense to a charge of interstate transportation of child pornography). With that legal backdrop, and given the officers’ belief that a child victim and deadly weapons were likely in the Bellottes’ home, I cannot conclude that in light of preexisting law, it would have been clear to any reasonable officer that a no-knock entry violated the Constitution.
The majority opinion contends that there is “nothing in the appellants’ brief that even purports to suggest that Mr. Bellotte somehow kept a child victim in the house with his family.” However, I find much in the briefs before this Court to reflect the parties’ acknowledgement that the police officers held such a belief. The officers’ brief states that the “Bellottes alleged that the search warrant was invalid because ... (5) the search warrant was obtained by making a false statement.” Opening Brief at 5. Indeed, the Bellottes in their brief confirm this allegation:
In any event, Detective Edwards, as had others, wrongly concludes that this 35-year-old female is a 5 or 6-year-old child. Her imagination kicked in and she concluded without any foundation that this may be a kidnapped child being held in the non-existent basement at [the Bellottes’ home].
... In spite of Detective Edwards’ knowledge of the Bellotte children being at home, in spite of knowing that child molesters rarely ever engage in their nefarious schemes around their own children, Detective Edwards sought a search warrant.
BHef of Appellees at 14-15. The Bellottes’ brief further states that Detective Edwards “defended her decision to carry out a nighttime search with a SWAT team as justified by the fact that Mr. and Mrs. Bellotte possessed concealed weapon permits and the fact that the police did not know if the ‘child’ was in the house ‘or somewhere else.’ ” Id. at 16.
Additionally, this is an appeal from the denial of summary judgment on qualified immunity. Summary judgment is not to be granted unless “the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.” Fed.R.Civ.P. 56(c). Upon reviewing, de novo, whether the district court erred by not granting summary judgment, I would not limit the evidence to be considered to solely that which is presented in the appellants’ briefs. In order to determine whether preexisting law made the unlawfulness of this entry apparent, “the facts must be evaluated from the perspective of a reasonable officer at the scene, and the *431 use of hindsight must be avoided.” Orem v. Rephann, 523 F.3d 442, 448 (4th Cir.2008) (quotation marks omitted).
The preexisting case law the majority cites does not establish that the circumstances confronted by these officers could not support a reasonable suspicion of danger. See Ornelas v. United States, 517 U.S. 690, 698, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996) (“It is true that because the mosaic which is analyzed for a reasonable-suspicion or probable-cause inquiry is multi-faceted, one determination will seldom be a useful ‘precedent’ for another.”) (citation and quotation marks omitted). United States v. Grogins, 163 F.3d 795 (4th Cir.1998), like a number of cases on which the majority relies, is far removed from the facts of this case. The suspect in Grogins was a notorious drug dealer with a history of violence. Police performed a no-knock entry into a suspected “stash house” where police believed the suspect kept his drug inventory. Id. at 796. The house, however, belonged to an acquaintance of the suspect. When police entered they found a large quantity of drugs, but the only person present was the acquaintance, who was charged with possession with intent to distribute a controlled substance. Id. at 797. Grogins did little to inform the officers here whether a no-knock entry into a suspected child abuser’s home — where the suspect, multiple firearms, and the child victim were believed to be present — was lawful.
United States v. Singleton, 441 F.3d 290 (4th Cir.2006), is a similarly distinguishable drug case. There, the officers obtained a no-knock search warrant predicated upon three general categories of allegedly exigent circumstances: 1) the suspect’s remote criminal history included violence; 2) a generalized concern about the tendency to violence in drug-ridden neighborhoods; and 3) a generalized concern about the violent tendencies of drug dealers. The court ultimately upheld the search based on good — faith reliance on the warrant. However, the court suggested in dictum that the no-knock entry might not have been justified because the defendant’s remote criminal history was the only specific factor that distinguished “this particular search from many others that police conduct on a daily basis.” Id. at 294. By contrast, the officers in this case had particularized information leading them to believe that child abuse was occurring in the Bellottes’ residence, where multiple firearms were likely present. The circumstances here are therefore a far cry from the routine drug investigation in Singleton.
Gould v. Davis, 165 F.3d 265 (4th Cir.1998), did little more to put the officers in this case on notice that the circumstances they confronted were insufficient to justify a no-knock entry. In Gould, police executed a no-knock entry into the home of the plaintiff, the father of a suspected armed robber, while the suspect was in police custody. Id. at 268. The no-knock warrant was issued based on the violent nature of the suspect’s crimes and probable cause to believe that handguns would be found in the plaintiffs house. Id. At the time of entry, the officers knew that the plaintiff was not involved in the armed robberies and that he had no criminal history. The plaintiff was shot during entry and he sued under Section 1983. This Court held that the officers were not entitled to qualified immunity because “any reasonable officer would have rejected as inconsistent with clearly established law in 1992 ... a belief that [the plaintiff] might use a weapon because of the criminal propensities of his children.” Id. at 271. This holding did not clearly establish the unlawfulness of the no-knock entry here, where the suspect was believed to be in the home and was under investigation for child abuse.
*432 There is simply no ease law that speaks to the presence or absence of exigent circumstances in the context of a child abuse investigation in which the child victim and multiple firearms are believed to be in the suspect’s custody. Thus, there were no “bright lines” demarcating the limits of a reasonable suspicion of danger under these circumstances. Campbell, 483 F.3d at 271. “If the law at [the time of entry] was not clearly established, an official could not reasonably be expected to anticipate subsequent legal developments, nor could he fairly be said to ‘know’ that the law forbade conduct not previously identified as unlawful.” Harlow v. Fitzgerald, 457 U.S. 800, 818-19, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982). Although the law is now settled as to any similar entries arising in the future, I must conclude that no preexisting law clearly established the unlawfulness of this particular entry. Therefore, I would hold that the officers are entitled to qualified immunity on the no-knock entry claim.

 My fine colleagues in the majority suggest that the officers have offered no "objective basis" in this appeal for a belief that a child victim was in the house. The record on appeal contains a photograph showing what two Virginia police officers and at least three West Virginia police officers believed to be an adult’s penis beside the face of a very young girl, evidence of Mr. Bellotte’s defensive and evasive behavior at the Wal-Mart store, and Detective Edwards’ deposition testimony. This evidence, most assuredly, provides an "objective basis" to believe that a child victim could be in Mr. Bellotte’s home. In light of that belief, coupled with the reasonable belief that Mr. Bellotte had firearms within reach, I cannot conclude that the unlawfulness of this no-knock entry would have been apparent to any reasonable officer.